## W. B. FORDTRAN v. G. W. STOWERS.

Decided November 4, 1908.

#### 1.—Trial—Charge—Submission of Undisputed Fact—Harmless Error.

When the complaining party would not be entitled to a verdict, under any possible view or construction of the evidence, the submission by the court of an undisputed fact as an issue, is harmless error.

#### 2.—Contract—Essential Element.

One of the essential elements of a contract is an agreement or meeting of the minds of the parties by an offer on the one hand and an acceptance on the other. This element must be present in every contract whether express or implied.

#### 3.—Same—Broker—Right to Commissions.

A real estate broker is not entitled to commissions on a sale of property when his conduct, acts and services concerning the sale were voluntary and without authority or promise of compensation from the owner, even though his conduct, acts and services were conducive to the consummation of the sale.

#### 4.—Trial—Limiting Effect of Evidence—Practice.

When testimony is evidence upon only one issue, and it is apprehended it might be considered by the jury in determining other issues, it is the duty of the party desiring to limit the effect of the testimony to the proper issue, to ask a special charge to that effect.

#### 5.—Principal and Agent—Implied Contract—Pleading.

When, in an action by an agent against his principal for commissions on a sale of property, the agent relies on an implied contract, he should plead the same by specifically alleging the facts and circumstances from which the contract might be implied so as to enable the court to determine from the allegations whether they were such as would constitute a contract. An implied contract can not be proved under allegations of an express contract.

#### 6.—Principal and Agent—Appointment of Agent—Proof—Volunteer.

A broker, or other agent, has authority to act for his principal only by virtue of an appointment, express or implied, by the latter. No particular form of appointment is necessary; it is sufficient, ordinarily, to show that the agent acted with the consent of his principal, and this may be shown by written instrument, by words or by implication from the conduct of the parties. But

proof of this appointment or consent in some form is indispensable in an action by an agent against his principal for compensation for services rendered. A volunteer is not entitled to compensation for services rendered.

### 7.—Contract—Breach—Pleading and Proof.

To authorize a recovery for breach of a contract the proof must show that the very contract declared upon was breached, and the charge of the court should so instruct the jury.

### 8.—Trial—Improper Argument—Bill of Exception—Requisite.

A bill of exception which shows on its face that improper language or argument of opposing counsel was not excepted to at the time it was used, and possibly not until after court adjourned, will not be considered on appeal. Such exception should be taken at the time the language is used or, at least, during the trial.

Appeal from the Fifty-seventh Judicial District, Bexar County. Tried below before Hon. A. W. Seeligson.

*Masterson, Atkinson & Masterson, Cobbs & Cobbs, John H. Cunningham* and *E. T. Chew,* for appellant.—When defendant below gave to appellant, as a real estate broker, for sale, his property, and gave his minimum price for the same, and conferred, consulted and advised with him concerning the sale thereof at said price, and accepted the fruits of appellant's labor and the money expended by him in the efforts he made to effect the sale of said property, and availed himself of the opportunity to sell by making the sale to the purchaser found and procured by appellant, the law implied that he, as such owner of the property, would pay said real estate broker the usual fees for such character of services at the time and place such sale was made and service performed, and such implied contract of employment had all the force and effect of an express contract; and the testimony offered was material and necessary to maintain said implied contract, should the jury fail to find evidence of consent upon Stowers' part to pay the 2½ percent commission asked by the broker. Harrell v. Zimpleman, 66 Texas, 294; Byrd v. Frost, 29 S. W., 46; Conkling v. Krakauer, 70 Texas, 739; Gibson v. Gray, 43 S. W., 925; Roche v. Smith, 176 Mass., 597; Kyle v. Rippey, 20 Ore., 453; Graves v. Bains, 78 Texas, 92.

*Nat B. Jones,* for appellee.

NEILL, ASSOCIATE JUSTICE.—The appellant sued appellee to recover $5,000 as commissions alleged due him as a real estate broker for services rendered in effecting a sale of certain real property of the latter.

Plaintiff's petition, after alleging that on September 16, 1906, he was pursuing the business of a real estate broker in the city of Houston, Harris County, Texas, avers substantially: That on the day aforesaid he entered into a verbal contract with defendant whereby he agreed and undertook to sell, for a commission hereinafter stated, certain designated real estate for the defendant which the latter represented to plaintiff that he owned, and would sell, and convey a good title thereto to any purchaser plaintiff could procure for him.

That plaintiff, being engaged in such business and learning that defendant was desirous of selling the property, after making inquiries and

ascertaining that he had a client in the market for such property, endeavored to make arrangements with defendant whereby he could sell such property. That he had various negotiations, beginning in the early part of September, 1906, with defendant, and that, finally, on or about October 4, 1906, he went to San Antonio to see the defendant, when and where it was agreed between plaintiff and defendant that, in case the former should procure a purchaser for the latter able to purchase it, the property could be sold for a sum not less than $200,000, part cash, and the balance to be paid for by the purchaser's assuming an outstanding obligation against it of $75,000, and that plaintiff was to receive in compensation for his services in effecting the sale a commission of two and one-half percent on the sum of $200,000. That in the conversation, culminating in the agreement, plaintiff represented to defendant that H. Masterson was a customer of his (plaintiff's) whom he had induced to make an offer to purchase the property for the sum of $210,000, to be paid by his assuming the $75,000 debt against the same, by paying defendant $85,000 cash, and conveying him Houston real estate to the value of $50,000; that defendant was not willing to accept the trade as an entirety which would compel him to take any real estate as a part of the consideration, but agreed with plaintiff that he might continue his agency to make the sale if he could convert any of the property Masterson proposed to convey into money so the trade could be carried out, and to that end defendant allowed plaintiff thirty days to consummate the trade and convert the property proposed by Masterson as a part of the consideration into money. That notwithstanding the agreement that plaintiff was to have more time to consummate such trade with Masterson, defendant himself, before the time had elapsed, closed the trade with him.

That defendant fully understood the terms upon which the sale was to be made by plaintiff to Masterson, and fully ratified such terms, and authorized plaintiff to make the same; whereby defendant agreed and obligated himself to pay plaintiff two and one-half percent commission on $200,000, the price for which the property was sold.

That the refusal of defendant to accept said proposition upon the terms and conditions as alleged made for Masterson was for the purpose of depriving plaintiff of his justly earned commission and defeat him by selling the property himself; that thereafter defendant went to H. Masterson and sold the property to him for $200,000, which was the amount paid and assumed by the purchaser to defendant for the property, such being the sum defendant had agreed with plaintiff to accept upon his procuring a purchaser. That when defendant made the sale he had full knowledge of the fact that H. Masterson was a customer of plaintiff, and had been by him interested in the property, induced to consider the purchase, and procured as a purchaser of the property, plaintiff being the real and moving cause of bringing defendant and Masterson together and effecting the sale.

That plaintiff procured Masterson as a purchaser, who was ready and able to carry out at any time the contract in accordance with the terms and stipulations made to him by plaintiff, as before alleged; and that, therefore, plaintiff has become entitled to the sum of $5,000 as his commission, together with interest from date of sale.

After making the averments as above stated, the petition continues, verbatim, as follows: "Plaintiff further represents that, in pursuance of the said contract so entered into by and between him and the defendant, he used his utmost diligence and worked faithfully to secure a purchaser for the property who was able to comply with the terms thereof, and that he did procure and bring to the said defendant the said H. Masterson, who agreed to take said property upon the terms and stipulations required as hereinbefore set out, and could have, and would have, within the said thirty days, sold said land received from said Masterson for not less than $45,000, but said defendant, so your petitioner believes, for the purpose of preventing your petitioner from receiving the amount of his compensation for the services performed to earn the commission upon said sale, rejected the said Masterson, and endeavored to cancel his contract with plaintiff, although he knew plaintiff had performed the services faithfully and well, and that thereafter that said defendant himself, ignoring the rights of your petitioner, took up the sale with said Masterson, who would not have purchased from the defendant had it not been for plaintiff, and closed the trade for some less than he was willing to take for the property from plaintiff by closing the trade with said Masterson for the sum of $200,000 aforesaid. Wherefore, for the reasons stated hereinbefore, the said defendant, by virtue of said contract, became indebted to the said plaintiff in the sum of $5,000 as commission. The plaintiff further represents that said sum of $5,000 commission is a reasonable value of said services performed, and that said services performed as hereinbefore stated are reasonably worth the sum of $5,000, and that said sum was and is the usual and customary amount paid for such services on such contracts in the city of Houston, Harris County, Texas." It concludes with a prayer for $5,000, with interest thereon at the rate of six percent per annum from date of sale.

The defendant answered by general and special exceptions (none of which was presented to the court) to plaintiff's petition, a general denial, and specially, that if plaintiff was instrumental in making the sale, his conduct, acts and services in effecting it were purely voluntary, without authority from defendant or promise of compensation therefor, and that if any compensation is due plaintiff it is by the purchaser, H. Masterson, and not defendant, and that the sale was made by one Morse & Stowers, and not by plaintiff.

The case was tried before a jury, who returned a verdict for defendant, upon which the judgment appealed from was entered.

*Conclusion of fact.*—The evidence wholly fails to show that any such agreement or contract as is declared upon was ever made by the plaintiff and defendant.

*Conclusions of law.*—1. Under our view of the case, which will be exposed in considering other assignments, it is immaterial whether plaintiff was the procuring cause of the alleged sale or not. For, if our view of it is correct, it may be conceded that the undisputed evidence shows he was the procuring cause; still, as there was an absolute failure of evidence to prove other facts essential to his recovery, a verdict in no

event could have been rendered for him. Therefore, the plaintiff could not have been prejudiced by the third paragraph of the court's charge, as is complained of in the second assignment, even should it be construed to have submitted as an issue a fact proved by the undisputed evidence.

2. There was no error affording plaintiff any just ground of complaint in the court's charging the jury that if they believed from the evidence plaintiff's conduct, acts and services concerning the sale of defendant's property were voluntary, and without authority or promise from the defendant, that their verdict must be for him.

One of the essential elements of a contract is an agreement or meeting of the minds of the parties, by an offer on the one hand and an acceptance on the other. This necessary element must be present in an implied as well as in an express contract. If it is absent in either, no obligation is created. The terms "express contracts" and "contracts implied in fact" are used to indicate, not a distinction in the principles of contract, but a difference in the character of the evidence by which a simple contract is proved. The same elements essential to constitute a contract of the one character are necessary to the existence of the other. If, then, the plaintiff's services in effecting the sale were voluntary, and without authority or promise from the defendant, as the jury found and as we believe the evidence clearly shows, there was an absence of an essential element—"a meeting of the minds by an offer on the one hand and acceptance on the other"—of a contract, either express or implied, and no obligation rested upon the defendant to pay plaintiff anything, though he may have rendered services in effecting the sale. It is for these reasons we have held the charge, complained of by the third assignment, not erroneous in so far as it affects plaintiff.

3. What was said in the conversation between plaintiff and H. Masterson in Houston on October 5th and 6th, regarding the sale of the property, the defendant not being present, was not admissible as evidence for any purpose save to show what efforts, if any, plaintiff made to sell the property to Masterson. Where testimony is evidence only upon one issue, and it is apprehended it may be considerd by the jury in determining other questions, it is the duty of a party who desires to limit the jury in its consideration to such issue to ask a special charge to that end. Therefore the special charge given at defendant's request, which is complained of in the fourth assignment of error on the ground that it so limits the effect of such testimony, was proper.

4. The court did not err in instructing the jury that unless they believed from a preponderance of the evidence that the defendant expressly employed plaintiff on October 4, 1906, as his agent to sell the property, they should find for the defendant. For it will be observed that the petition declares upon a verbal contract made on the day referred to in the charge, and specifically sets forth the terms of the agreement entered into between the parties and its performance by the plaintiff. It, in connection with defendant's answer, presented the issues: (1) Was such contract made? and (2) if it were, was it performed by the defendant? Unless the first was established in the affirmative there was an end of the case, for no one can ever perform an agreement that never existed. If there was an implied agreement constitut-

ing plaintiff defendant's agent to effect the sale, it should have been pleaded by specifically alleging the facts and circumstances from which the contract might be implied, so as to enable the court to determine from the allegations whether they were such as, if proved, would constitute a contract. Certain it is that one can not declare upon an express contract, and, failing to prove it, recover upon the same allegations, by reason of such failure, on an implied agreement. If the language used by plaintiff and defendant in the conversation between them on October 4, 1906, which plaintiff introduced in evidence in support of his allegations as to an express contract, did not show a verbal contract, it certainly can not be taken as proof of an implied one.

5. The seventh assignment of error complains of the court's refusing this special charge: "The plaintiff would be entitled to recover if you believe from all the evidence that he was the moving and efficient cause of the sale, even though the sale was made by the defendant at a price and upon terms different from those originally stipulated, and if you find that the plaintiff was the moving and efficient cause of the sale you will find in favor of him for the amount sued for," requested by plaintiff.

The effect of this charge is to assume as a fixed fact the affirmative of a controverted issue, that is, that plaintiff was authorized by the defendant to effect the sale. Unless, as we have before held, there was a contract, express or implied (in this case it must have been express, as it was so alleged), between the parties creating plaintiff defendant's agent to effect the sale, the former, though he may have been the efficient cause of its consummation, was not entitled to recover anything for his services. As in all classes of agents, a broker has authority to act for his principal only by virtue of an appointment, express or implied, by the latter. True, no particular form is necessary for such appointment. Ordinarily, all that is necessary to show is that the broker acted with the consent of his principal, whether given by a written instrument, by words, or by implication from the conduct of the parties. This consent is the *sine qua non* to the broker's right to recover commissions for making a sale. For if the broker renders services as a mere volunteer, without authority express or implied, the owner of the property is not bound to pay him anything for such services. (Pipkin v. Horne, 68 S. W., 1000; Ehrenworth v. Putnam, 55 S. W., 190; Dunn v. Price, 87 Texas, 319; Cook v. Welch, 91 Mass., 350; Hinds v. Henry, 36 N. J. Law, 328; McVickar v. Roche, 74 App. Div. (N. Y.), 397; Viley v. Pettit, 96 Ky., 576, 29 S. W., 438; Walton v. Clark, 56 N. W. (Minn.), 40; Barton v. Powers, 182 Mass., 467, 65 N. E., 286.)

6. The same vice is apparent in special charges Nos. 3 and 6, the refusal of which is the subject, respectively, of the eighth and eleventh assignments of error.

7. The ninth, tenth, fourteenth and fifteenth assignments of error complain of the court's refusal to give certain special instructions requested by plaintiff, submitting the case to the jury upon the theory of an implied contract. The requests were properly denied, because the theory upon which they were based was not deducible from plaintiff's petition, as is apparent from what we have said in disposing of other assignments.

8. The substance of special charge No. 8, which the thirteenth assignment complains of being refused, is embraced in the second paragraph of the main charge, which fully, clearly and accurately states the law upon the phase of the case the special charge was intended to cover. Besides, the requested charge does not confine the jury in its deliberations to the contract pleaded by the plaintiff, but would have authorized a verdict for him upon the proof of any contract defendant might have made with plaintiff to find a purchaser for the property described in the pleading, in which it was agreed to pay the latter two and one-half percent commission on the amount the property was to be sold for, provided he procured a purchaser ready, willing and able to buy upon the terms specified in such contract. To authorize a recovery for a breach of contract the proof must show that the very contract declared upon was breached. Consequently, the charge should be so drawn as to identify the contract sued upon and confine the jury to it in its deliberations as to the issues of whether or not such contract was made, whether it was broken, and the damage ensuing from its breach. As there is no statement annexed to appellant's propositions under this assignment, as is required by rule 36, we are not able to say, without reading the entire statement of facts, that there was not evidence of other contracts between the parties to which the requested charge would be as applicable as it is to the one declared upon.

9. The sixteenth assignment complains that the court erred in permitting counsel for defendant in his argument to state to the jury: "That he believed the testimony showed the claim of plaintiff was a concocted scheme to defraud defendant of $5,000, and an unholy alliance between a real estate man and a lawyer." The bill of exception upon which this assignment is based shows upon its face that the language was not excepted to when used, nor until the bill of exception was drawn, which may have been, for aught that appears from the record, after the court adjourned. For the record shows that plaintiff was allowed twenty days from adjournment of court to prepare and file bills of exceptions; that the court adjourned on February 1, 1908, and that the bill of exception was not filed until the 19th of that month.

It is hardly necessary to say that a remark of the nature of the one in question should be excepted to when made, or, at least, during the trial. However, as the objection, shown by the bill of exception, was that there was no evidence of any such conspiracy between the land agent and the lawyer, and there is no statement subjoined to the proposition under the assignment in appellant's brief showing the lack of such evidence, we are not able to say as a matter of law that, notwithstanding the exalted character of their professions, an unholy alliance may not possibly exist between a real estate man and a lawyer. If, however, such an alliance is once shown to exist between them, it might be regarded by a lawyer, whose client is the victim of the conspiracy, as fraudulent *per se.*

10. The seventeenth and eighteenth assignments of error complain of the court's excluding certain testimony offered by plaintiff for the purpose of showing the value of his services. If the contract sued upon was ever made by the parties it fixed the compensation he was to receive

for his services. If it was not made he was entitled to nothing on a *quantum meruit.* Therefore the testimony was properly excluded.

There is no error in the judgment and it is affirmed.

*Affirmed.*

Writ of error refused.