**BROWN et al. v. ODNEAL. (No. 1284.)**

(Court of Civil Appeals of Texas. El Paso. Feb. 23, 1922. Rehearing Denied March 23, 1922.)

1. **Brokers** ⬅⬆86(1)—**Evidence held not to show right to commissions on sale of oil and gas lease.**

In broker's action for commission on sale of an oil and gas lease, evidence *held* not to show a contract by defendants.

2. **Principal and agent** ⬅⬆54—**Power to delegate agency strictly limited.**

The authority of an agent is exclusively personal, unless from the express language used, or from the presumption growing out of the exigencies of the particular transaction based upon the custom or usage of trade, a broader power was to be conferred upon the agent.

3. **Brokers** ⬅⬆55(1)—**Not entitled to commission where sale consummated through another broker.**

If a broker, knowing that the owner has another broker engaged to make the sale, finds a purchaser, but such purchaser quits him and the sale is finally consummated through the other broker, the first broker is not entitled to a commission.

Appeal from District Court, Pecos County; Jas. Cornell, Judge.

Action by H. T. Odneal against George M. Brown, Howell Johnson, and others. The cause was dismissed as to defendant Johnson, and, from judgment for plaintiff against the remaining defendants, they appeal. Reversed and rendered.

Hill & Hill, of San Angelo, and Howell Johnson, O. W. Williams, and W. A. Hadden, all of Ft. Stockton, for appellants.

R. D. Blaydes, of Ft. Stockton, and Geo. E. Wallace, of El Paso, for appellee.

WALTHALL, J. H. T. Odneal brought this suit against Howell Johnson, E. P. Sweatt, Geo. M. Brown, and R. P. Hinyard, jointly and severally, to recover a commission on the sale of an oil and gas lease to Schimmel & Co., on 13,440 acres of land belonging to Sweatt, Brown, and Hinyard, in Pecos county. Odneal was engaged in the real estate and oil lease brokerage business at Ft. Stockton, Tex., and Judge Howell Johnson was also acting as a broker in the sale of oil leases. Sweatt, Brown, and Hinyard owned the said lands and listed same exclusively with Johnson for sale of an oil and gas lease thereon.

Odneal's petition is in two counts. In the first count he declares upon an express oral agreement alleging that Johnson, acting for himself and as agent for Sweatt, Brown, and Hinyard, engaged him to sell an oil and gas lease on said lands to Schimmel & Co., and agreed to pay him 4½ cents an acre as his commission; that thereafter, acting under said agreement he sold an oil and gas lease on said lands to Schimmel & Co. for 25 cents an acre cash and yearly rental of 25 cents an acre, and that thereafter Johnson, Sweatt, Brown, and Hinyard sold to Schimmel & Co., a lease upon said land. Odneal alleged that prior to the sale all defendants had full knowledge of his services and of the agreement with Johnson for the commission and of his having been the efficient and procuring cause of said sale, and that by reason of said agreement, knowledge, and sale defendants became liable to him for a commission of 4½ cents an acre, amounting to the sum of $604.80.

In the alternative, Odneal alleged that Johnson acting for himself, Sweatt, Brown, and Hinyard, represented to him that he (Johnson) was the exclusive agent of the other defendants for the sale of the oil and gas lease on said lands, and listed said land with him for sale of an oil and gas lease; that by his own personal efforts he negotiated a sale of an oil and gas lease to Schimmel & Co. for a consideration agreeable to and accepted by defendants, with full knowledge prior to such sale of all of his efforts connected herewith; that the usual and customary commissions at Ft. Stockton for securing purchasers for oil leases through real estate brokers is five cents an acre, aggregating $672, which he alleged to be a reasonable sum for said services.

Defendants answered by general demurrer; special exception to the alternative plea. Sweatt, Brown, and Hinyard deny all the allegations in the petition, and specially deny that they ever at any time authorized Odneal to sell or lease said land; they specially deny that Johnson was authorized by any of them to employ or contract with plaintiff to lease, sell,· or dispose of any or all of said lands for oil and gas or other purposes.

Brown, answering for himself and Sweatt and Hinyard, alleges that Odneal approached him and desired to represent them in the leasing of said lands, but that he (Brown) then and there refused to discuss the matter with him and informed him that Johnson was the only person authorized to lease said lands, and refused to entertain or listen to Odneal about the matter. Sweatt, Brown, and Hinyard further answer that Johnson informed them that he could lease said lands for oil and gas for 25 cents net an acre to them and an annual rental of 15 cents an acre, which they accepted.

The case was tried without a jury. The court sustained exceptions to the petition as to Johnson and dismissed the cause as to him, to which action appellee made no objection. The court likewise sustained exceptions to the cross-action of Johnson against Odneal and dismissed the cross-action. The court held in favor of Odneal on his second or alternative plea as to Sweatt, Brown, and Hinyard, and as to them, a jury having been waived, the court rendered judgment in favor of Odneal for $672.

Sweatt, Brown, and Hinyard prosecute this appeal.

The trial court made no findings of fact. The material facts are as follows: Howell Johnson and H. T. Odneal live in Ft. Stockton, and both were engaged in the real estate and oil lease brokerage business, and, at the inception of the matters involved in this controversy, were occupying the same building, but before the deal was ·actually begun of leasing the lands Johnson had removed to another building. At that time Johnson and Odneal were on intimate and friendly terms, each talking over with the other the matters each had in hand. Johnson was the exclusive agent for the leasing of Sweatt, Brown, and Hinyard lands, and Odneal had as a prospective buyer of oil and gas leases Schimmel & Co., of Fort Worth. Early in May, 1921, J. D.· Schimmel went to Ft. Stockton, and met Odneal. Schimmel expressed to Odneal his desire to lease about 40 sections of land. Odneal told Schimmel he thought he could get the lease of the Sweatt, Brown, and Hinyard lands for him, and they, Schimmel and Odneal, agreed on the price. Odneal told Schimmel that he would charge him 5 cents an acre commission, and Schimmel agreed to it and that· he would let Odneal get out and rustle it for him. At

that time Odneal called Johnson from across the street and introduced him to Schimmel and had him explain the title to other lands not involved here. Odneal then saw Mr. Livingston and explained to him that he had a man to whom he could lease his (Livingston's) lands. The Livingston lease was written and signed, Johnson writing the lease.

Here the evidence of Odneal and Johnson are somewhat at variance. Odneal testified:

"While he (Johnson) was drawing up the papers (Livingston lease), and he mentioned about the Brown and Sweatt stuff, and said, 'I have got the exclusive sale,' and so Judge (Johnson) asked me to put in that Brown and Sweatt stuff, and I said, 'All right, you just write Mr. Brown or wire him and tell them we will give them $100 a section for his land and 25 cents rental,' which would leave us 9 cents for us to split, and he says, 'All right.' After we got through drawing up the papers on the Livingston land, I told him I was going to El Paso the next day with Schimmel and for him to get me up a list of all the Brown and Sweatt land so that I could put it up to Schimmel when I went off. So he came over to the courthouse and got a list the next morning of all the numbers of the sections, and I put it up to him while in El Paso, or while on the train, I don't know which, and—

"The Court: What was Schimmel willing to pay? A. Twenty-five cents and 25 cents rental.

"The Court: You would be getting $128? A. At 20 cents I would have been getting that; I was trying to get the Brown and Sweatt stuff at $100 a section, and I told him to offer them $100, and we would have 9 cents to split between us. I was fixing to go with Mr. Schimmel to El Paso. Judge (Johnson) got this inventory of this land and handed it to me on all the numbers of the Brown and Sweatt land, the 21 sections. * * * I took this up with Mr. Schimmel and showed him the inventory of these sections, and he took out his map and marked them off, and I told him just to take the inventory list, and he said, 'All right,' and he said as quick as he could get back to Fort Worth he would have his boy write to me in regard to this land. When he got back to Fort Worth, I got a letter stating that his boy was in East Texas, and that as soon as he got back he would have him write me, and so I waited then for a few days, and when his boy got back he wrote me a letter. I have that letter accepting that land through my hands, coming through me, and so when I got this letter I took it over to Judge Johnson's office and showed it to the judge, and I said: 'She is sold; have you heard from Brown and Sweatt?' And he said no, that he had not heard from them, and I told him, 'You get busy and write them or wire them to find out whether Brown and them would take that one hundred a section for their land or not,' and he said: 'Better not wire them; they might think something is up.' And I said, 'All right, write.' I would ask him every day whether he had heard from them· or not, because I wanted to know, because I had other lands that I could fill the bill with if they rejected that $100. * * * And so it went along a good while, and so one day Judge John-

son came into my office, and I told him, and I said, 'Judge, I believe I will just write Brown a letter and make him a straight offer of 15 cents and 15 cents rental,' and he said, 'Don't do that,' that he had done wrote him, and it wouldn't do any good for me to write. I said, 'Did you tell them I was the man that sold it?' and he said, 'Yes,' so I said there wouldn't be any use of my writing them then. So in a day or two I was sitting in my office, and here come Brown, and Sweatt and Hinyard was out there looking for the judge. So I asked Brown, I told him, 'I guess you have come up to close the deal,' and he said 'Yes,' and I said, 'I guess Judge told you that I was the one that sold it,' and he said: 'No, he didn't say anything about you; he said he had the land sold at 25 cents and 15 cents rental.' And I said it must be backwards, that Judge just got it backwards, and says it is 15 cents and 25 cents rental, and he says, 'That's sure what Judge wired me,' and I said, 'He's sure got it backwards,' and Brown said, 'Maybe he has.' So I rung up the judge. He was at the house, and I told him the people had come in to close the deal. I wanted to get some definite answer so I could wire my man, and he said, 'I can wire him.' * * * He (Brown) went up and saw the judge, and after a while he came back and said: 'Judge says that is right, 25 cents and 15 cents rental is what he wired, and he is ready to close the deal.' * * * I said: 'Maybe he has sold that to Luse or somebody else; if he has, I haven't got a word to say; but, if it is to my man, I want my commission.' "

Odneal testified that he knew Johnson had the exclusive sale of the Brown, Sweatt, and Hinyard lands, and that they (Brown, Sweatt, and Hinyard) had never given him authority or permission to make the deal.

On the issue of what was the fair, usual, and customary commission in the absence of an agreement, the only evidence found in the record was by Odneal. He said he did not know what the others charged; that he did not take leases for less than 5 cents an acre; that the least he knew of was 5 cents an acre. The record does not further disclose what is considered a fair or reasonable commission for selling the oil and gas lease.

Judge Howell Johnson advised Sweatt, Brown, and Hinyard that he could lease the lands on terms of 25 cents net to them for the first year, and 15 cents after the first year. They knew nothing at that time of Odneal's efforts to lease to Schimmel, other than is detailed in Odneal's statement above. They had never authorized Johnson to engage the services of Odneal, or any other person, in leasing the lands.

The lands were eventually leased to Schimmel & Co. through Johnson. Sweatt, Brown, and Hinyard had paid Johnson nothing at the time of the trial as commission for leasing the lands; the full 25 cents an acre cash payment on the lease was paid to Sweatt, Brown, and Hinyard with no deduction therefrom by Johnson for commissions.

Mr. J. D. Schimmel testified that, in his conversation with Odneal, Odneal put the proposition up to him that he would try to get for his company the balance of block 144 at the same price at which his company bought of Livingston in the same block—

"That he had no agreement concerning the lands, and we had not agreed on any price. * * * I have not stated that Odneal has made any claim for commission, and I don't know whether or not he has made such claim. There appears in the files of Schimmel & Co.'s office what purports to be a letter from H. T. Odneal, in which it appears that he is making a claim for commission. The letter appears to have been written at a time subsequent to the consummation of the deal."

[1] We have concluded that no liability arises by reason of the facts shown in the record, against the appellants. It is undisputed that the appellee had no contract or agreement with the appellants or either of them, to make a sale of the lease, or to have any connection whatever in handling the lands. Appellee knew that Johnson had the exclusive agency to lease appellant's lands. Odneal's connection with the transaction was wholly with Johnson. In presenting the matter of leasing lands to his clients, Schimmel & Co., appellee exacted an agreement from them that in the event he secured a lease he was to have his commissions from them.

All that could be held from the evidence in this case is that appellee brought the buyer and the agent of appellants together, and furnished the buyer with a list of appellants' lands, and with the understanding with the agent of the seller that he could negotiate the sale. Here the seller refused to recognize Odneal as their agent in handling the deal. The evidence does not show that appellants knew that Odneal was representing them in any way affecting the lease of their lands, and there is in the evidence no suggestion of an agreement between appellants themselves and Odneal that appellants would pay Odneal a commission. If there was an agreement express or implied, that Odneal was to receive a commission on the consummation of a lease to Schimmel & Co., such agreement must have been had with Johnson and to the effect only that Johnson would divide his commission with Odneal. In the conversation appellee had with appellants, Schimmel & Co., was not mentioned. Nor did appellee at any time inform appellants that he would expect a commission from them in the event of a lease of their lands, but said to them, "If it (the sale) is to my man, I want my commission." Johnson, later and before the sale was finally made, told appellants that the sale was to Schimmel & Co., but there

was no statement or suggestion by Johnson to appellants that Odneal would expect a commission from them.

We do not find in the record what seems to us an express or implied contract between appellants and Odneal for a commission. The evidence shows affirmatively that Johnson had no authority to engage the services of another agent on behalf of appellants. In Pipkin v. Horne (Tex. Civ. App.) 68 S. W. 1000, the rule is stated to be that—

"A real estate agent is entitled to commissions only when he brings the parties together by virtue of a contract made with him by one or both of the parties, by virtue of which they become liable to him by reason of some express or implied promise to pay a commission. Simply bringing the parties together in the absence of some contract by which they would be liable to him, does not * * * make them liable to him for a commission."

In Fordtran v. Stowers, 52 Tex. Civ. App. 226, 113 S. W. 631, it was held that the minds of the parties must meet by an offer on the one hand and an acceptance on the other in an implied contract as well as in an express, and, if absent in either, no obligation is created. To the same effect is the holding of the Supreme Court in Dunn v. Price, 87 Tex. 318, 28 S. W. 681; Burgher & Co. v. Floore, 107 Tex. 112, 174 S. W. 819; and of this court in Newell v. Lafarelle (Tex. Civ. App.) 225 S. W. 853.

[2] This brings us to the question of the authority of Johnson, the agent of appellants, to engage the services of Odneal so as to make appellants liable for his commissions. The doctrine in relation to substitution is that the authority is exclusively personal, unless from the express language used, or from their presumption growing out of the exigencies of the particular transaction based upon the custom or usage of trade, a broader power was to be conferred upon the agent. Smith v. Sublett, 28 Tex. 163; Eastland v. Maney, 36 Tex. Civ. App. 147, 81 S. W. 574; Brutinel v. Nygrel, 17 Ariz. 491, 154 Pac. 1042, L. R. A. 1918F, p. 713. See, also, a full discussion of the subject by Judge Key in Williams v. Moore et al., 24 Tex. Civ. App. 402, 58 S. W. 953.

The reason of the rule seems to be based upon the idea that, unless the principal has given assent to the employment of a subagent, there is no privity of contract between the principal and the subagent. Judge Story states the general rule of law to be:

"That if an agent employs a subagent to do the whole or any part of the business of his agency, without the knowledge or consent of the principal, express or implied, then, inasmuch as no privity exists in such a case between the principal and the subagent, the latter will not be entitled to claim from the principal any compensation for commissions, or advances or disbursements in the source of his subagency. But his whole remedy therefor is against his immediate employer, and his whole responsibility is also to him. But where, by the usage of trade, or the express or implied agreement of the parties, a subagent is to be employed, there a privity is deemed to exist between the principal and the subagent, and the latter may, under such circumstances, well maintain his claim for such compensation both against the principal and the immediate employer, unless exclusive credit is given to one of them, and if it is, his remedy is limited to that party."

Appellee seems to base his claim for commissions on the idea of a ratification by the appellants of the employment of appellee by Johnson. We think the evidence does not show a ratification of such employment by appellants.

Appellee refers us to Graves v. Baines & Woodward, 78 Tex. 92, 14 S. W. 256. That case is not in point. In that case Graves, one of the owners of the land, engaged the services of Baines, one of the partners engaged to sell the land, but reserving the right to sell it himself. Baines did not then know that Shackley, the other owner, had any interest in the land. Baines found a purchaser, showed him the premises, and told him the terms: the purchaser agreed to the terms. The purchaser then went to see and close the purchase with Graves. The trade was closed on slightly different terms than given to Baines. Shackley agreed and the deed was written, signed, and acknowledged. The purchaser in closing the deal did not inform Graves of the negotiations with Baines. Graves informed Shackley of his employment of Baines, but that he had reserved the right to themselves to sell without having to pay commissions. After the deed was drawn up, signed, and acknowledged, but before delivery of the deed and payment of the money, Woodward informed Graves and Shackley that they owed them commissions. Shackley would not have made the sale for less than the amount he received; but with full knowledge of the facts of the employment of Baines and that Baines and Woodward claimed the commissions, and that Baines had found the purchaser, they did not object or repudiate it, but acquiesced in it and closed the deal. The court held that Graves and Shackley affirmed the contract with knowledge of the facts. Here it appears that appellants did not engage the appellee to sell, told him he was not their agent, that Johnson was, and that Johnson had advised them that he (Johnson) had made the sale. The evidence does not show that any of the appellants knew that appellee claimed a commission from them. He said to them that, if the sale was to his man, he would have his commissions, but did not indicate to him at that time, or any other time, that it was to come from them. His declaration that he would expect his commission in the event of a sale to his man does not show an accept-

239 S.W.—23

ance by appellants nor an implied assent that they would pay the commission. To us it seems that appellants did not ratify the employment by Johnson of Odneal, nor that Johnson had agreed with Odneal on a commission.

[3] But if it could be said that Odneal acted as one of the brokers in the matters, found the purchaser, and that his services in doing so were to that extent accepted by the appellants, yet it is unquestioned that Johnson was also a broker, engaged by appellants to make the sale. Odneal knew that Johnson also had the same lands for sale and that appellants were trying to sell through Johnson to Schimmel & Co.

As said in Edwards v. Pike, 49 Tex. Civ. App. 30, 107 S. W. 586, in the absence of special circumstances which would make it proper to so charge them, the owners ought not to be held liable for commissions to more than one broker. In that case it is said:

"In such a case [two brokers], the risk of finally effecting by his agency, on terms agreed upon between him and the buyer, a sale of the property, ought to be borne by the broker. His services towards effecting one are performed with a knowledge on his part that another broker has authority similar to that conferred upon him; and, if before a sale is completed the buyer quits him and on other terms consummates it through another agent, it is a contingency he should be held to have contemplated at the time he undertook the service, and about the happening of which he has no right to complain. Vreeland v. Vetterlein, 33 N. J. Law, 247; Scott v. Lloyd, 19 Colo. 401, 35 Pac. 733; Farrar v. Brodt, 35 Ill. App. 617; McGuire v. Carlson, 61 Ill. App. 295.

"The broker who undertakes a sale of property with full knowledge that another broker has also undertaken to sell it ought not to expect more of the owner than that he will not interfere in favor of the one or the other. It is then an even contest between them, where the chances of success in contemplation of the competition to be expected should be presumed to have been duly weighed by each; and, if as a result of such competition, without interference or fault on the part of the owner, the sale is actually consummated by his competitor, the broker who brought the prospective purchaser and the owner together, but failed to consummate a sale upon the terms agreed upon between him and the buyer, ought not to be permitted to charge against the owner the loss sustained by him, not by the owner's fault, but as a result of acts of his competitor and conduct of the purchaser which he reasonably should have contemplated might ensue when he undertook and performed the service."

We have concluded that the judgment of the court cannot be sustained by the evidence, and, presuming that the evidence has been fully developed on the hearing, the case is reversed and here rendered in favor of appellants.

Reversed and rendered.

---

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes