### DENISON v. NUNN. (No. 7089.)

Court of Civil Appeals of Texas. Austin.
March 16, 1927.

Rehearing Denied April 20, 1927.

1. **Principal and agent** ⨐189(4)—**Pleadings held sufficient to present question of agent's authority to execute notes and issue of estoppel to deny his authority.**

In suit on notes, pleadings alleging in substance that agent executing notes was general agent managing defendant's business, having authority to discount notes and borrow money and execute notes, and alleging both express and implied authority, and that defendant by so vesting general authority in agent and so holding him out to public and because business had actually received benefits of money borrowed, is estopped to deny authority, *held* sufficient to present both question of agent's authority and issue of estoppel.

2. **Trial** ⨐352(5)—**Issue submitted on question of agent's authority held not subject to objection that it embodied two questions in one.**

In suit on notes, issue, "Did defendant, in his contract of agency with H., limit his borrowing of money and execution of promissory notes to First National Bank of Granger, and

amount of such credit to about $6,000?" *held* not subject to objection that it embodied two questions in one, where defendant had pleaded and testified that confinement of H.'s authority to borrow money, both as to bank and as to maximum amount, was a single limitation.

3. **Appeal and error** ⨐1062(1)—**Submitting issue whether general agency, as it had been defined, existed, held not error, where general agency was fully established by evidence.**

In suit on notes, submitting issue, "Did general agency, as that term is hereinbefore defined, exist between defendant" and H. at time of execution of notes? *held* not error, where general agency was so fully established that it was not necessary to submit issue to jury.

4. **Principal and agent** ⨐109(1)—**Authority to execute note may be implied, where exercise of it is necessary to accomplishment of agency.**

Authority of agent to execute note may be implied or inferred, where exercise of it is so necessary to accomplishment of agency that such intent of principal must be presumed in order to make power of agent effective.

5. **Principal and agent** ⨐123(9)—**Facts held to show agent's authority to execute notes was necessary to effectuate purpose of agency; i. e., carrying on principal's business.**

In suit on notes, facts *held* to show that defendant's agent's authority to borrow money and execute notes therefor was clearly necessary to effectuate purposes of agency; i. e., carrying on principal's business.

6. **Principal and agent** ⨐109(1)—**Where execution of notes was necessary in conduct of business and essential to effectuate purposes of agency, agent had actual authority to bind principal.**

Where borrowing of money and execution of notes was necessary in conduct of business and essential to effectuate purposes of agency, such power is vested in agent by necessary implication and clothes him with actual authority to bind principal as much as would express grant from principal.

7. **Appeal and error** ⨐1042(2)—**Striking portion of defendant's answer that defendant's agent executed note sued on because of defalcations, if error, held harmless, where proof showed money went into defendant's business.**

Striking portion of defendant's answer alleging that defendant's agent had misappropriated money and borrowed money, for which notes sued on were given, to replace his defalcations, if error, *held* harmless, where proof showed that money borrowed actually went into defendant's business.

8. **Evidence** ⨐155(10)—**Where defendant had pleaded limitation on agent's authority to borrow money made in conversation with bank president, plaintiff could show by bank president what limitations, if any, were made.**

In suit on notes, where defendant had pleaded limitation on authority of agent, who executed notes, to borrow money, and testified that he

had made same in conversation with bank president, plaintiff could show by bank president what limitations, if any, defendant had made in conversation.

**9. Principal and agent ⬅120(6)—Evidence of specific dealings of agent with others held admissible to show manner in which agent conducted business as general manager.**

In suit on notes executed by defendant's agent, evidence as to specific dealings of agent with others, whether plaintiff knew of particular instances or not, *held* admissible to show manner in which agent conducted business as general manager and how he dealt with public.

**10. Principal and agent ⬅119(1)—Where principal had been about premises frequently, he was presumed to have known manner in which agent conducted business.**

Where principal had testified that he was about premises frequently to see how business was getting along, he was presumed to have known manner in which agent conducted business and to have acquiesced therein.

**11. Principal and agent ⬅120(6)—Where principal has acquiesced in continued course of dealing by agent, agent's acts in dealing with public are admissible to show authority (Rev. St. 1925, art. 5932, § 19.)**

Where principal has acquiesced in continued course of dealing by his agent, acts of agent in dealing with public *held* admissible to show his authority under Rev. St. 1925, art. 5932, § 19, providing that agent's authority to execute note may be established as in other cases of agency, especially where public, in reliance upon long-continued exercise of apparent power, had been led to deal with him in good faith and without knowledge of any limitation.

Appeal from District Court, Williamson County; Cooper Sansom, Judge.

Action by J. W. Nunn against F. L. Denison. From the judgment, defendant appeals. Affirmed.

A. L. Curtis, of Belton, and Wilcox & Graves, of Georgetown, and Jno. B. Daniel, of Temple, for appellant.

W. H. Nunn, of Georgetown, and Wood & Wood, of Granger, and Critz & Lawhon, of Taylor, for appellee.

BAUGH, J. Nunn sued Denison on two promissory notes, one for $2,200, dated December 26, 1924, and the other for $3,400, dated December 26, 1925, signed, "Granger Motor Co., by C. A. Hughes, Mgr." Denison was the sole owner of the Ford agency and garage at Granger, operating same in the trade-name of Granger Motor Company, with C. A. Hughes in full charge thereof as manager. We will designate the parties as in the lower court. Plaintiff alleged full power in Hughes to execute the notes. Defendant answered by plea of non est factum, denying such authority in Hughes. In a supplemental petition, plaintiff pleaded implied, if not express, authority in Hughes, estoppel against defendant to deny Hughes' authority, and, in the alternative, that the money borrowed from him for which the notes were executed went to pay drafts with bills of lading attached for cars, trucks, tractors, and parts, and actually went into defendant's business, and that, if not liable on the notes, he was liable for money had and received. By supplemental answer, the defendant pleaded, among other things, that Hughes' authority to borrow money was confined to the First National Bank of Granger, and there in a sum not to exceed $6,000. Further statement of the pleadings will be made in discussing the issues raised.

The case was submitted to a jury on special issues, which, with their answers thereto, were as follows:

"(1) Did a general agency, as that term is hereinbefore defined, exist between the defendant, Denison, and C. A. Hughes as agent for defendant's business in Granger at and prior to the time the said Hughes executed and delivered to plaintiff, Nunn, the two notes sued on herein? Answer: Yes.

"(2) If you answer question No. 1 'Yes,' then answer this question: Did the defendant, in his contract of agency with C. A. Hughes, limit his borrowing money and execution of promissory notes, to the First National Bank of Granger, and the amount of such credit to about $6,000? Answer: No."

"(4) In lending money to the said agent, Hughes, on the two promissory notes sued on herein, did the plaintiff, Nunn, act in good faith, and in ignorance of private instructions of limitations, if any, given by defendant to said Hughes, in the contract of agency? Answer: Yes.

"(5) Taking into consideration the character and nature of the business in which the said Hughes was employed by the defendant as agent and manager, was it necessary or proper, in conducting said business, for the said Hughes to execute the two notes herein sued on and borrow money represented by said two notes? Answer: Yes.

"(6) Did defendant, in his said business, get the benefits of the identical proceeds derived from the execution and delivery by the said Hughes of the two notes herein sued on? Answer: Yes."

Appellant brings 50 assignments of error and 29 propositions of law in which in various ways he attacks the sufficiency and form of plaintiff's pleadings, the action of the trial court in striking out portions of his supplemental answer, the court's charge, the admissibility of certain testimony, and contends that, under the testimony and the findings of the jury, the judgment was clearly erroneous. To discuss these questions in detail is unnecessary and would unduly prolong this opinion. The pleadings alone compose 47 pages of the transcript. The real question in the case is whether or not, in the

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

conduct of Denison's business at Granger, Hughes was shown to have had authority to borrow money from Nunn and to execute the notes sued upon.. We have reached the conclusion that such authority was shown, and that the judgment of the trial court should be affirmed. Though not referring to them in detail, we shall discuss those propositions raised by appellant which we deem material.

[1] Plaintiff's allegations in part as to Hughes' authority were as follows:

"That several years prior to the 26th day of December 1924, and up to and including the 26th day of December, 1925, and all during said time, the defendant operated and managed said business entirely through his general agent, C. A. Hughes, who had absolute and complete general authority to do any and everything that was necessary or proper to be done in the operation and management of said business, including the buying and selling of tractors, automobiles, and parts for said tractors and automobiles, oil, tires, and other merchandise usually bought and sold and handled in a business of that character, the hiring, paying, and discharging of employees, workmen, and mechanics, the discounting of notes, the borrowing of money in the name of the defendant for the operation of said business, and maintaining of a cash checking account in bank, and executing notes therefor in behalf of the defendant, and in extending the time of payment of said notes, in renewing the same, in the paying off and discharging of said notes, the securing of money and funds so to do, and in the execution of new notes therefor; and has authority generally to do all and everything proper and necessary to carry on and operate said business, as general manager thereof. That the said Hughes was, during all of said time, in actual, public, and notorious charge of said business, operating, conducting, and controlling the same as above alleged, and actually, publicly, habitually, and notoriously doing and performing all of the acts and authority above and hereinafter alleged."

Following this, plaintiff alleged both express and implied authority in Hughes to execute the notes sued upon; and that the defendant, by so vesting such general authority in Hughes and so holding him out to the public, and because the business had actually received the benefits of the money borrowed, was estopped to deny his authority to execute the notes in question. These pleadings were, we think, clearly sufficient to present both the question of the agent's authority and the issue of estoppel.

[2] We think the evidence fully sustains the broad powers vested in Hughes as above alleged. In fact practically the only limitation thereon claimed by Denison himself was that, in the negotiation and sale of the notes taken from customers, the indorsement thereof should be "without recourse," and that, in borrowing money in the conduct of the business, Hughes was to confine same to the First National Bank and to a sum not in excess of about $6,000. That latter limitation he claims to have made in a conversa-

tion with Mr. Storrs, president of said bank, about the time Hughes took charge of the business in 1922. In this he was expressly contradicted by Storrs, and the jury found against him on it. Nor is this issue submitted in question No. 2, subject to the objection urged by the defendant that it embodies two questions in one. Ordinarily said question would be subject to this objection, but in the instant case the defendant pleaded and testified that the confinement of Hughes' authority to borrow money, both as to the bank and as to the maximum amount, was a single limitation upon his authority; and there was no error in so submitting it to the jury.

[3] Nor do we sustain the defendant's complaint of the trial court's charge on what constituted a "general agency" as submitted in question No. 1. Except as to the limitations above mentioned claimed by Denison, one of which was submitted to the jury, the general agency of Hughes was admitted. Indeed it would be difficult to establish an agency more general in its scope than the instant case discloses. The uncontroverted evidence discloses that Denison, in effect, made Hughes his alter ego, and completely turned the business over to him, to run virtually as he saw fit. He bought and sold as he chose, for cash or on credit, and took old cars in exchange for new ones; he hired or fired employees, and fixed their salaries; he looked after insurance, renting the premises, negotiating notes of customers, making oil agency contracts, and exercised complete authority over the business. During the last two years of his management he even executed the contract of agency itself with the Ford Motor Company, signing the name of the "Granger Motor Company." His "general agency" was so fully established that it was not, in our opinion, even necessary to submit that issue to the jury.

[4, 5] It is not necessary for us to enter upon any extended discussion of the powers and limitations upon an agent in the execution of promissory notes. Ordinarily such authority must be expressly conferred. But it may be implied or inferred where the exercise of it is so necessary to the accomplishment of the agency that such intent of the principal must be presumed in order to make the power of the agent effectual. The rule as stated in 2 C. J. 638, § 281, and supported by Texas Cases, is as follows:

"The rule of strict construction adopted in the case of the execution by an agent of negotiable instruments is not to be pursued to the extent of defeating, by technical interpretation, the obvious intent of the principal as gathered from a reasonable interpretation of the instrument appointing the agent. Hence, if the agent's act in that regard be within such intent it will bind his principal. Much must depend upon the position of the agent and circumstances of the case, and the agent's author-

(293 S.W.)

ity to execute or indorse commercial paper will be presumed whenever such power is reasonably necessary to effectuate the main object of the agency. In accord with this it has often been held that power to conduct the principal's business as he might do includes power to make and indorse negotiable paper when the nature of the business is such as to require it, although such necessity must be clearly shown. Such authority may be implied from a power to borrow money, to purchase on credit, to discount a bill or note, or to transfer a draft."

In the instant case the most of the merchandise handled—automobiles, trucks, etc.—was in carload lots, with draft and bill of lading attached. It had to be paid for in full upon delivery. This necessarily required an amount of cash at such times larger than good business management would ordinarily be required to have on hand, and made it necessary that loans should, on such occasions, be made for a short time at least. Denison recognized and admitted such necessity, went with Hughes to the bank when he put him in charge, and arranged that money be borrowed on such occasions. Under these circumstances Hughes' authority to borrow money and to execute notes therefor was clearly necessary to effectuate the very purposes of his agency; i. e. carrying on the principal's business at Granger.

[6] But the defendant insists that plaintiff could hold defendant liable on said notes only by showing, either that Hughes had actual authority to sign them, or by showing such facts as would estop the defendant to deny such actual authority, citing Ins. Co. v. Bank, 17 Tex. Civ. App. 477, 43 S. W. 831, and Tres Palacios, etc., Co. v. Eidmon, 41 Tex. Civ. App. 542, 93 S. W. 698, relying especially on the latter. He insists that actual authority must mean express authority, and that, since plaintiff failed to show express authority in Hughes, and since no issue of estoppel was submitted to the jury, no liability was shown. Such contention is not sustained. If the borrowing of money and the execution of notes was necessary in the conduct of the business, and essential to effectuate the purposes of the agency, such powers vested in the agent by necessary implication, and clothe him with actual authority to bind his principal as much as would an express grant from the principal.

We do not deem it necessary to discuss the issue of estoppel, because the defendant was bound on the notes otherwise, but, if same were necessary to sustain the judgment of the trial court, we are of the opinion that the pleadings and the facts proven in this case are sufficient to bind the defendant by estoppel.

[7] Nor was it error for the trial court to strike out those portions of defendant's supplemental answer alleging that Hughes had misappropriated $30,000 or more in the management of the business, had sent the defendant statements regularly showing the business to be in a prosperous condition, and that the money borrowed was to replace his defalcations. These matters could in no way affect the authority vested in Hughes. It was not incumbent upon Nunn to inquire into Hughes' reports to Denison, or as to whether same were true or false. Those were private matters, and such as would not be available to the public in dealing with Hughes. Defaults by Hughes were shown, and Denison contends it was because of such defaults that Hughes borrowed the money from plaintiff. But there is no contention that Nunn or the public generally had any knowledge thereof. Indeed, Denison himself knew nothing of same until in February, 1926, after the notes were executed. So far as Nunn was concerned, he could have assumed that the profits from the business had all been remitted to Denison. But, if it were error to strike out that portion alleging that the money obtained from Nunn went to replace in part the defalcations of Hughes, such error was harmless, because the proof clearly shows without controversy that the money borrowed actually went into the defendant's business, and the jury so found.

[8-10] Nor do we sustain defendant's exceptions to the admission of testimony. Defendant had pleaded a limitation on the authority of Hughes to borrow money, and testified that he made same in a conversation with Storrs, president of the bank. Plaintiff was therefore entitled to show by Storrs what limitations, if any, the defendant had made in that conversation. Nor was it error to receive testimony as to specific dealings of Hughes with Granger banks and with the public, whether Nunn knew of the particular instances or not. Such instances and acts were admissible to show the manner in which Hughes conducted the business as general manager and how he dealt with the public. The testimony objected to merely evidenced the scope and manner in which he actually exercised the general authority vested in him. He had had full charge of this business for 3½ years. Denison testified that he was in Granger frequently and about the premises to see how the business was getting along. He is therefore presumed to have known the manner in which Hughes conducted the business, and the testimony shows that in many instances he did know of same, and will be held to have acquiesced therein.

[11] Section 19, art. 5932, R. S. 1925, of the Negotiable Instrument Act, provides that the authority of an agent to execute a note "may be established as in other cases of agency." The fact and extent of an agency may be established by circumstantial evidence. Jackson v. Walls (Tex. Civ. App.) 187 S. W. 676. And, if it appear that the principal has

acquiesced in a continued course of dealing by his agent, as was manifest in the instant case, the acts of the agent in dealing with the public are admissible to show his authority. International Harvester Co. v. Campbell, 43 Tex. Civ. App. 421, 96 S. W. 93. This is especially true where in so doing the public, in reliance upon the long-continued exercise of such apparent power, even if not actually vested, has been led to deal with him in good faith and without knowledge of any limitation. Collins & Douglas v. Cooper, 65 Tex. 460.

We have not undertaken to discuss the appellant's propositions in detail, but what we have said disposes of the material questions raised. Finding no error in the record, the judgment of the trial court is affirmed.

Affirmed.