## McDORMAN v. GOODELL et al.
### No. 2957.

Court of Civil Appeals of Texas. El Paso.
March 8, 1934.

W. H. Winter and F. C. Knollenberg, both of El Paso, for appellant.

Norcop & Momsen, of El Paso, for appellees.

PELPHREY, Chief Justice.

On January 17, 1931, F. McDorman executed a note in the sum of $352.50 to the Citizens' Finance Company, and gave a chattel mortgage on a 1928 Cadillac sedan. The note was payable in ten monthly installments of $35.25 each, the first one due on February 17, 1931. Among the provisions of the chattel mortgage were these:

"Said mortgagor promises that he will use said goods and chattels with reasonable care, skill and caution, and keep the same in good repair, and will not permit the same to be used for hire, damaged, injured or depreciated, and will not sell or attempt to sell, assign or dispose of said goods and chattels, or any interest therein, or remove or permit the same to be removed from the County wherein he, she, it now resides without the written consent of said note holder, and will not encumber or permit any encumbrance or lien of any character whatsoever against the same; and that he will pay all taxes that may be levied against said goods and chattels, this instrument or the indebtedness secured hereby.

"Mortgagor further agrees that he will not use or cause or permit to be used the car, truck or tractor herein mentioned for the transportation of liquor, wines or any other beverage, for personal or commercial use, prohibited by any Federal or State Statute to be transported, and it is hereby agreed that should the car, truck or tractor hereinbefore described be used for such purpose or any other unlawful purpose, it shall be considered as a default under the mortgage, whether or not there shall be a default under any other terms or conditions thereof, which shall entitle the holder of said note to immediate and continued possession of the car, truck or tractor herein described with or without process of law.

"In case default be made in the payment of said debt or interest after maturity, or of any of the payments scheduled on said note, or any extensions or renewals thereof, or if any execution, attachment, sequestration or other writ shall be levied on said goods and chattels, or if a petition in bankruptcy shall be filed by or against said mortgagor, or if said mortgagor shall make an assignment for the benefit of his creditors, or said mortgagor shall fail to keep and perform any of the covenants, stipulations and agreements herein contained on his part to be performed, or if said note holder at any time deem said mortgage, said chattels, said debt, or said security unsafe or insecure, or shall choose so to do, then upon the happenings of said contingencies, or any of them,

the whole amount herein secured, on each of said payments scheduled on the note remaining unpaid is by said mortgagor admitted to be due and payable, and said note holder may at his option (notice of which option is hereby expressly waived), foreclose this mortgage by action or otherwise, and said note holder is hereby authorized to enter upon the premises where said goods and chattels may be, and remove with or without process of law, sell the same and all equity of redemption of the mortgagor therein, either at public auction or private sale, without demand for performance, and out of the proceeds of said sale pay the cost of foreclosing this mortgage and the expense of pursuing, taking, keeping, advertising and selling said goods and chattels, including a reasonable attorney's fee, and applying the residue thereof toward the payment of said indebtedness or any part thereof, in such manner as said note holder may elect, rendering the surplus, if any, unto the said mortgagor, his executors, administrators and assigns."

On January 23, 1931, McDorman also executed a bill of sale, to the Citizens' Finance Company, to a platinum bracelet and a diamond Masonic ring. This bill of sale was executed for the purpose of securing a loan of $800 to be repaid at the rate of $80 per month. Four installments were paid on the $352.50 note and one payment of $80 made on the $800 one.

The automobile was repossessed in the latter part of June and it was sold on January 25, 1932, for $75. The ring was sold on February 17, 1932, for $360, and $195 of that amount appears to have been applied on the $800 loan and $165 on the automobile note. The bracelet was sold July 28, 1931, for $525, which was applied on the $800 note. Mrs. Genevieve McDorman, the wife of Fred McDorman, filed this suit December 5, 1932, against appellees for conversion of the automobile, ring, and bracelet, alleging them to have been her separate property. Appellees answered by general demurrer, special exception, a general denial, and specially pleaded the execution of the above-mentioned loans, mortgage, and bill of sale, default on both loans by McDorman, and the sales of the different articles. Appellees further alleged the sale of the automobile as being under the power in the chattel mortgage and the sales of the bracelet and ring to have been made at private sales to which appellant and her husband agreed, and that appellant and her husband agreed that the proceeds of the sales of the ring and bracelet should first be applied to payment of the $800 note and any surplus remaining to payment of the automobile note.

In the alternative appellees alleged that if the property was the separate property of appellant, then her husband was her duly authorized agent in the transactions with appellees; that his borrowing the moneys, mortgaging of the automobile, and pledging the ring and bracelet were within the scope of his agency and such acts were authorized by and binding upon appellant; that she and her husband both agreed to the sales of the ring and bracelet; that his agreement to such sales was within the scope of his agency; and that appellant having received the benefits from both the automobile and jewelry loans, she is estopped to deny McDorman's authority to make the loans or the authority of the Citizens' Finance Company to make the sales of the property.

In response to special issues the jury found that the ring was not the separate property of appellant; that the automobile and bracelet were; that she impliedly authorized her husband to mortgage the automobile and pledge the bracelet; that she ratified both loans; that the automobile was worth $400 when it was repossessed by appellee Citizens' Finance Company, and the bracelet $650 when sold by it; that appellant received the proceeds or benefit of both loans, and used the same knowing them to be such; that F. McDorman agreed to the sales of the car and bracelet, as the same were made; that appellant did not agree to the sale of the car as made, but did agree to the sale of the bracelet; and that she did not authorize her husband to agree to the sale of the car, but did authorize him to agree to the sale of the bracelet.

Upon such findings the court rendered judgment that appellant take nothing and she has appealed.

## Opinion.

Appellant's brief contains fifty assignments of error with thirty-five propositions thereunder.

We shall not attempt to enter into a discussion of either the assignments or propositions, separately, but shall content ourselves with ruling upon those which we consider material to a proper disposition of the case.

 The answer of appellees contained the following:

"For further answer herein, these defendants allege that the benefit of said automobile and diamond loans accrued to the plain-

tiff and that she is estopped to deny the validity of said mortgage and pledge, and to deny the authority of said F. McDorman to execute said mortgage and pledge individually and as agent for plaintiff, and that she is further estopped to deny the authority of the Citizens Finance Company, Inc., to sell said diamonds and automobile and apply the proceeds derived from said sales to the balance due the said defendant, Citizens Finance Company, and that to allow the plaintiff to deny the same would be a fraud upon these defendants."

Appellant filed the following exception to the answer:

"Now comes Genevieve McDorman, and excepts to the answer filed herein of the defendants and for grounds of exception assign the following:

"1. The said answer states no defense to plaintiff's causes of action and that same is insufficient in law and should be dismissed.

"Wherefore plaintiff prays the judgment of the court.

"2. Without waiving the foregoing general exception, but insisting on same, the plaintiff excepts especially to defendant's third special answer to plaintiff's causes of action alleged in her petition and say that said special answer is insufficient in law and states no defense to plaintiff's causes of action; states only conclusions and states no facts constituting an estoppel against plaintiff's causes of action and states no fact alleging fraud upon the part of this plaintiff against defendants or either of them."

After the jury was impaneled and sworn, appellant requested the court to rule on the above exceptions. Appellees objected to any action by the court because they had not been called to the attention of the court before the impaneling of the jury. The court thereupon stated that he would first hear the evidence, and, during the introduction of evidence, appellant objected to the introduction of testimony on the ground that there was no pleading to support it and again asked the court to rule on her exceptions. No ruling was made, however, until the hearing was had on the motion for judgment, when the same were overruled.

Appellant assigns error to the court's ruling thereon. In connection with her objections appellant urges that there is no allegation that she made any false representation; that there is no allegation that appellees relied upon any representation made to

thém by her or that they suffered any damage by reason of any act of appellant.

We agree with appellant that the allegation of such facts is essential to a plea of ordinary estoppel, but there is also a character of estoppel as to which all of these elements are not necessary.

In 21 C. J. § 207, p. 1206, we find an announcement of it as follows:

"Where one having the right to accept or reject a transaction takes and retains benefits thereunder, he ratifies the transaction, and cannot avoid its obligations or effect by taking a position inconsistent therewith."

In 10 R. C. L. § 22, p. 69A, it is said:

"The doctrine of equitable estoppel is frequently applied to transactions in which it is found that it would be unconscionable to permit a person to maintain a position inconsistent with one in which he has acquiesced or of which he has accepted any benefit. * * * And so also the acceptance of any benefit from a transaction or contract, with knowledge or notice of the facts and rights, will create an estoppel."

In discussing estoppel as applied to the relation of principal and agent, we find in 10 R. C. L. § 83, p. 765, this announcement:

"And when a principal, with knowledge of the facts, adopts and takes the benefits of the acts of his agent, he cannot afterwards impeach the agent's act in that particular."

Our Supreme Court in City of San Antonio v. Marie O. Grandjean et al., 91 Tex. 430, 41 S. W. 477, 480, 44 S. W. 476, we think clearly recognized the doctrine laid down in the first two quotations and, furthermore, applied it as to a married woman. In that case Mrs. Grandjean sued the city of San Antonio in trespass to try title to recover a parcel of land in San Antonio claimed by the city as part of one of its streets. The city, among other things, pleaded that the property at one time belonged to the community estate of Mrs. Grandjean and her husband, Ulysses Grandjean; that there had been a regular proceeding instituted against the husband to condemn the property as a street; that the land had been condemned, damages assessed and paid, and that Mrs. Grandjean, with knowledge of the facts, had accepted one-half of the sum assessed as damages. The court, in its discussion, said:

"In this case the city council had declared that the property should be condemned for use as a street, and had caused the damages to be assessed. Mrs. Grandjean was not made

a party to the proceedings, and was not bound by the assessment. But she had the election to take what was tendered her, or to decline it, and take her chances upon a new assessment. She accepted one-half, the other half having been paid to her husband; and we think that she is bound by her election."

We have concluded that the pleading was sufficient and that no error was committed by the court, in overruling the exceptions thereto.

Another contention of appellant is that the jury having found the automobile and bracelet to be her property; that she did not expressly consent to the mortgage, pledge, sale, or conversion of the automobile and bracelet; and that the market values of the automobile and bracelet were $400 and $650, respectively; she was entitled to a judgment. Appellant argues, in support of the above position, that implied authority is based upon estoppel and that estoppel being neither pleaded nor proved, the court erred in rendering judgment for appellees upon the jury's finding that appellant impliedly authorized her husband to mortgage the automobile and pledge the bracelet.

 There is no difference in principle between an express and implied contract of agency. These distinctive terms are used merely to mark differences in the character of the evidence by which the relationship of principal and agent is proved. 2 Tex. Jur. 398; Fordtran v. Stowers, 52 Tex. Civ. App. 226, 113 S. W. 631. Implied authority of an agent is not based upon estoppel. City National Bank v. Conley (Tex. Civ. App.) 228 S. W. 972.

See, also, Denison v. Nunn (Tex. Civ. App.) 293 S. W. 838; Continental Oil Co. v. Baxter (Tex. Civ. App.) 59 S.W.(2d) 463.

Some of the Texas courts seem to have confused the terms "implied authority" and "apparent authority" and in so doing have inadvertently held that implied authority was based upon estoppel. We think the pleadings of appellees sufficient to raise the issues of express and implied authorization.

Without here attempting to detail the evidence, we think it was sufficient to support the jury's findings on the material issues.

 Ratification need not be specially pleaded; it may be proved under a general allegation of the agent's authority to act as it is equivalent to antecedent authority. 2 Tex. Jur., § 216, pp. 636, 637, and authorities cited.

 It follows, therefore, that there is no merit in appellant's contention that the court erred in submitting the issue as to ratification. We cannot agree with appellant that the case was submitted upon a wrong theory and her propositions to that effect are overruled.

 It is true, as contended by appellant, that as a general rule similar transactions with different parties may not be shown to prove the transaction in controversy, the maxim being res inter alios acta, alteri nocere non debet. The law of agency, however, furnishes important exceptions to this rule and in those cases where the actual agency or authority is in question the rule is that proof that the alleged principal adopted similar acts in transactions with others about the time of the transaction in question is admissible in evidence upon the issue of authority vel non. 2 Tex. Jur. § 114, p. 512, and cases cited.

We have given careful consideration to the many questions presented by appellant in her brief and, while we shall not discuss each of them separately, we have concluded that no error is shown and her assignments are, accordingly, overruled.

The judgment is affirmed.