(74 App. Div. 397.)

### McVICKAR et al. v. ROCHE.

(Supreme Court, Appellate Division, First Department. July 8, 1902.)

1. REAL ESTATE AGENT—VOLUNTARY SERVICES—COMMISSION.
 Where a real estate agent, without being employed by the owner of vacant premises, introduced to the owner a. person who afterwards rented the premises, and rendered some assistance without the request or knowledge of the owner, he did not thereby become entitled to a. commission from such owner.

Appeal from trial term, New York county.

Action by Henry W. McVickar and others against Patrick H. Roche. From a judgment for plaintiffs, and from an order denying a new trial, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

C. V. Nellany, for appellant.
Ed. J. Maxwell, for respondents.

HATCH, J. This action was brought to recover commissions upon an alleged employment of Hyland P. Rice, an agent of the plaintiffs, a real estate firm, by the defendant as broker, to secure a tenant for premises which were part of the Rossmore Hotel, on Broad-

¶ 1. See Brokers, vol. 8, Cent. Dig. § 38.

way, New York City. The defendant was the lessee of the hotel, and upon taking possession had closed the dining room upon the first floor, placing a sign in the window that the same would be opened later, after alterations and repairs had been made. Rice, noticing the vacant premises, called upon the defendant, after sending him his card showing that he was a real estate broker representing the plaintiffs, and asked that a figure be set on the place, which request was declined, defendant stating that he had no desire to rent the premises. On the following day, however, Rice again called on the defendant, and brought with him one Rogaliner, whom the defendant had known for a considerable time, and Rogaliner asked Roche the rental price of the premises, but Roche refused to put any price upon them. The following morning Rice again called upon the defendant in respect to renting the premises, and at that time Roche asked him as to the payment of commissions, and was told that it was customary for the landlord to pay the commissions, and that he (Rice) would look to the defendant for his. Upon hearing this Roche seemed very much annoyed, and declared the whole deal was off, but after further conversation, according to Rice's testimony, in which Rice told defendant that he could afford to pay the commissions, defendant said that he "would see about that." Nothing whatever was said about commissions after this conversation until a lease was eventually made between Rogaliner and Roche. After the foregoing conversation between Rice and the defendant, defendant and Rogaliner met on numerous occasions, at some of which Rice was present, and finally came to a partial understanding as to the making of a lease of the premises. Some dispute, however, arising between them, the matter was called off. Rice again stepped in, going to Rogaliner, and getting him to call the defendant up on the telephone, and seeing defendant, and telling him that he would try and get Rogaliner to waive the point in dispute. Rogaliner did call Roche on the telephone, and talked with him on the subject of the lease, and thereafter the lease was consummated. Rice was not present when the lease was signed, nor did he know at any time for what price the defendant would rent the property, nor is there a scintilla of evidence throughout the case of any request on the part of the defendant that Rice should act as his agent. The defendant denies that he ever expressly or impliedly agreed to pay any commission to the plaintiffs. In support of this contention, it appears without denial that defendant ordered Rice out of his place on different occasions, and that at one time, when defendant and Rogaliner were talking about the leasing of the premises, defendant requested Rice to excuse them, and that, although Rice claimed to be interested in the matter, he withdrew. It was stated by Mr. Justice Ingraham, writing for a unanimous court, in Benedict v. Pell, 70 App. Div. 40, 74 N. Y. Supp. 1085, and quoting from Judge Woodruff in Pierce v. Thomas, 4 E. D. Smith, 354:

"To entitle a broker to recover commissions for effecting a sale of real estate, it is indispensable that he should show that he was employed by the owner (or on his behalf) to make the sale. A ratification of his act, where original employment is wanting, may, in some circumstances, be

equivalent to an original retainer, but only where there is a plain intent to ratify. An owner cannot be enticed into liability for commissions against his will. A mere volunteer without authority is not entitled to commissions, merely because he has inquired the price which an owner asked for his property, and then has sent a person to him who consents to take it. A broker has no better claim to recover for voluntary services, rendered without employment, and not received and acted upon by the owner as rendered in his behalf, than any other volunteer. * * * If, upon this proof, an owner is liable, and against his express refusal to employ the plaintiff, then no man is safe in stating to applicants the terms upon which he will sell. It is not true that an owner may not declare his price to whom he will without the hazard of paying commissions to those who volunteer, unasked, to send him a purchaser upon his own terms."

These words find precise application to this case. It is conceded that there was never any employment by the defendant of the broker. In the beginning he was purely a volunteer, having neither client nor customer. Liability, therefore, can only be predicated upon a ratification. But there never was any ratification, either in terms or otherwise. On the contrary, there was no promise to pay commissions, and when the parties had arrived at a partial understanding the negotiations were utterly broken off. There was not a particle of proof to show that after such event the defendant had any knowledge that the broker was acting about the matter, much less that he was actually engaged in his behalf. It may be that what the broker did brought the parties together after the negotiations were broken off, but this did not entitle him to commissions. Sibbald v. Iron Co., 83 N. Y. 378, 38 Am. Rep. 441. Two things must have appeared—First, that the defendant knew that the broker was still engaged in procuring a tenant; and, second, that the defendant ratified his acts. Both elements are wanting in this case.

It follows, therefore, that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide event. All concur.