## WILLINGHAM v. THOMPSON.

### No. 12793.

Court of Civil Appeals of Texas. Dallas.

Nov. 11, 1939.

Eades & Eades, of Dallas, for appellant. D. A. Frank and D. A. Frank, Jr., both of Dallas, for appellee.

BOND, Chief Justice.

This appeal is from a judgment in favor of appellee, John C. Thompson, for real estate commission for the sale of a tract of land belonging to the estate of Mary Estol Sherman, deceased, being administered by Guy E. Willingham, as independent executor. Appellant will be designated herein as defendant and appellee as plaintiff, as in the trial court.

Plaintiff alleged sufficient grounds for recovery of the commission, if sustained by proof. The ultimate question turns upon whether the plaintiff had a contract with defendant as will support a recovery, and, if so, whether the evidence is sufficient to raise the issue as to whether the plaintiff was the procuring cause, culminating in the sale of the land to the purchaser. If plaintiff had such contract, and the sale by defendant to the purchaser was the proximate result of plaintiff's efforts, then the findings of the jury to the effect that plaintiff was the procuring cause of the sale, must be given full verity and this Court would not be authorized to disturb its findings.

Plaintiff alleged that on and prior to September, 1937, he was engaged in the real estate business in the City of Dallas, and was employed by defendant to make sale of certain property belonging to the estate; accordingly, introduced L. F. Corrigan to the defendant, as a purchaser, ready, able, and willing to buy the property; that Corrigan did purchase said property from defendant for $12,500, and that, by reason thereof, plaintiff was entitled to five per cent of said consideration as commission for making the sale. Defendant answered by general demurrer and denial and, in the alternative, specially answered that plaintiff was a volunteer, acting on behalf of the purchaser and not the seller, and had abandoned his efforts toward a sale before its consummation by defendant through another agency.

Plaintiff must recover, if at all, upon the contract declared upon, and the primary essential element, as in all contracts, either express or implied, is the meeting of the minds of the parties, by an offer on one hand and an acceptance on the other. The right of plaintiff to compensation is predicated upon an express contract of employment. If Thompson was not so employed by Willingham to sell the land, clearly no obligation rested upon defendant to pay him anything, even though he may have rendered services in effecting the sale.

The material facts are uncontroverted. Whatever authority Thompson had, or assumed, to interest himself in defendant's property, is related by his own testimony and that of defendant, which plaintiff insists is material to the issue, and shows all the necessary elements for him to recover. Indeed, if it can be said that the testimony shows an express contract of employment by the defendant and that he was the procuring cause of the sale, or that such could reasonably be inferred, indulging every legitimate conclusion favorable to plaintiff which might be drawn from the facts proved, the judgment of the court below should be affirmed.

These are the material facts: Mary Estol Sherman died in July, 1935, leaving a written will which was duly probated and her brother, Guy E. Willingham, was appointed independent executor to take charge of all her property, including the lot in question. Plaintiff Thompson secured an offer from one Winfield Morton to purchase this property for $25,000, prior to the death of Mrs. Sherman, but she did not accept the proposition, or execute a contract with Thompson to sell the land. Shortly after the death of Mrs. Sherman, Thompson contacted Willingham and presented to him the Morton $25,000 offer, which Willingham also refused to consider, stating that he wanted and expected to get $35,000 for the property. Subsequently, plaintiff again saw Willingham and wanted him to sell the property to Corrigan for $25,000, which Willingham refused to do. On May 13, 1936, Willingham sold the property to R. L. Simons for a consideration of $35,000—$4,000 cash and the balance evidenced by notes. Simons defaulted and the property was reacquired by defendant. Thompson testified that, a short time before Willingham sold the property to Simons, he tried to get Willingham to go to Corrigan's office and sign a contract to sell the property to him for $25,000. Willingham declined to go. Plaintiff never again took the matter up with Willingham or Corrigan until after the property had been sold to Corrigan on September 21, 1937, through Cecil Moore, another agency. He abandoned all ef-

forts to sell the property. Quoting from his testimony:

"Q. Then later, did you know anything about the transaction until you saw the deed on record? A. I was waiting until the Centennial was over and Willingham had the lot back in his possession and I was waiting until the Centennial was over to make a cash offer of $20,000 and when it was over I called him and he said he had just sold it.

"On cross-examination, plaintiff further testified:

"Q. You said you were waiting until the Centennial was over before you took it up with Mr. Willingham? A. Yes.

"Q. After the sale was made to Simons for $35,000 and he paid $4,000 cash, the property was taken back, you never again saw Corrigan about this transaction, did you? A. No, not after it was sold to the Jew.

"Q. You never did take it up with Corrigan? A. No Sir.

"Q. When you called Willingham up who did you have as a buyer then? A. J. D. Smith for the same building and the same tenants.

"Q. And you were going to sell it to him for $20,000? A. Yes.

"Q. He was your client? A. He was.

"Q. Mr. Willingham never did list this property with you, did he? A. I never asked him to.

"Q. He never did tell you what price he would take for it, did he? A. No, he told me he was going to get $35,000.

"Q. He never did tell you what you could sell it for? A. No."

■ At the conclusion of the testimony, defendant presented a motion for judgment, which was overruled by the trial court, to which the defendant duly excepted; and again, on motion for new trial, the action of the court was called in question by proper assignment of error, which was refused; to which, defendant also excepted. We think the question for review is properly before this Court. There being no issue submitted to the jury, none requested, and, we think, none required under the related testimony, the trial court was without a predicate to base a finding that such a contract exists. In the absolute failure of evidence to prove or tend to prove an issue, no presumption arises that the court favorably found on the issue to support the judgment. The uncontradicted evidence · shows that defendant never listed the property with plaintiff to sell, never gave him a price for which he was authorized to make a sale, and the fact that plaintiff submitted an offer on behalf of Corrigan, that was not acceptable to defendant, did not entitle plaintiff to a commission, even though the property was later sold to Corrigan through another agent; especially so, where the sale was consummated more than a year after plaintiff had ceased to interest himself in the property.

■ Where a broker makes an unsuccessful attempt to sell property to a prospective purchaser, and then abandons his efforts, another agent may sell to such purchaser without the owner's being liable to the first broker. Plaintiff admits that he had abandoned his efforts after sale of the property to Simons, and did not intend· to renew his efforts to sell until after the Texas Centennial Exposition had closed. In the meantime, defendant had reacquired the property from Simons and sold it to Corrigan through the agent Cecil Smith, to whom he paid commission. The jury also found that the plaintiff had abandoned the undertaking.

In Fordtran v. Stowers, 52 Tex.Civ.App. 226, 113 S.W. 631, 634, plaintiff sued for commission, alleging a contract to sell the land; defendant denied the contract. Judgment was for the defendant and, on appeal, the case was affirmed and writ of error denied by the Supreme Court. In the course of the opinion, the court said: "One of the essential elements of a contract is an agreement or meeting of the minds of the parties, by an offer on the one hand, and an acceptance on the other. This necessary element must be present in an implied, as well as in an express, contract. If it is absent in either, no obligation is created. * * * If, then, the plaintiff's services in effecting the sale were voluntary, and without authority or promise from the defendant, as the jury found, and as we believe the evidence clearly shows, there was an absence of an essential element—'a meeting of the minds by an offer on the one hand, and acceptance on the other'—of a contract, either express or implied, and no obligation rested upon the defendant to pay plaintiff anything, though he may have rendered services in effecting the sale. * * * Unless, as we have before held, there was a contract, express or implied (in this case,

it must. have been express as it was so· alleged), between the parties creating plaintiff defendant's agent to effect the sale, the former, though he may have been the efficient cause of its consummation was not entitled to recover anything for his services. As in all classes of agents a broker has authority to act for his principal only by virtue of an appointment express or implied, by the latter. True no particular form is necessary for such appointment. Ordinarily all that is necessary to show is that the broker acted with the consent of his principal, whether given by a written instrument, by words or by implication from the conduct of the parties. This consent is the sine qua non to the broker's right to recover commissions for making a sale. For if the broker renders services as a mere volunteer, without authority, express or implied, the owner of the property is not bound to pay him anything for such services. Pipkin v. Horne (Tex.Civ.App.) 68 S.W. 1000; Ehrenworth v. Putnam (Tex.Civ.App.) 55 S.W. 190; Dunn v. Price, 87 Tex. 318, 28 S.W. 681; Cook v. Welch [9 Allen, 350], 91 Mass. 350; Hinds v. Henry, 36 N.J.L., 328; McVickar v. Roche, 74 App.Div. 397, 77 N.Y.S. 501; Viley v. Pettit, 96 Ky. 576, 29 S.W. 438; Walton v. Clark, 54 Minn. 341, 56 N.W. 40; Barton v. Powers, 182 Mass. 467, 65 N.E. 826."

See, also, Brown v. Odneal, Tex.Civ. App., 239 S.W. 350; Williams & Jones v. Gouldy, Tex.Civ.App., 239 S.W.· 364; Goode v. Sears, Tex.Civ.App., 226 S.W. 463; Powell v. Mulder, Tex.Civ.App., 228 S.W. 302; Slaughter v. Andrews, Tex. Civ.App., 83 S.W.2d 721.

In the case of Dunn v. Price, 87 Tex. 318, 28 S.W. 681, 682, the uncontroverted record shows that the plaintiff procured a purchaser, but did not disclose a contract of employment. Our Supreme Court, through Chief Justice Gaines, said: "There was no express promise to pay anything in this case; nor do we think that one can be clearly implied from .the language used. If one requests another to· perform a service for him, the law will ordinarily imply a promise to compensate him for the work. But where one, having property to sell, tells a broker that, if he will bring him a purchaser, he will sell at a certain price, it is by no means certain that he intends to imply a promise to pay a commission. The broker may get his compensation from the purchaser. In this case the defendant did not authorize the plaintiff to sell his property, nor did he employ him to sell it. He merely said to him, in effect, that, if he would bring him a purchaser, he would show him that he would sell for the sum of $30,000. Can it be said that it is clear that the defendant did not expect him to get his compensation from the purchaser whom he might procure? That such was his intention (if, indeed, his language was anything more than mere idle banter) is shown by the fact that his language was that he would take $30,000 for the property, and that there is not an expression in·it to indicate that he was willing to take that sum less a commission for selling. This conclusion is strengthened by the further fact that he had previously declined to employ the plaintiff to make the sale."

So, in the case at bar, it must be conceded that, to entitle plaintiff to recover a commission for his efforts to bring about the sale, it was indispensable that he show he was employed, or was requested by the owner to perform a service for which the law will imply a promise to compensate him. Such is not revealed in this record. Defendant's motion for judgment should have been sustained; the case having been fully developed, the duty rests upon this Court to render such judgment as the trial court should have rendered; accordingly, the judgment of the court below is reversed, and here rendered for the defendant.

Reversed and rendered.