Harold H. Hymes, J.
This is an action brought by a real estate broker to recover commissions alleged to he due her from the sellers of real property.
The defendant owners had placed a private ‘ ‘ for sale ’ ’ sign on their house. On or about September 9, 1961, the plaintiff broker had brought a prospective buyer into the neighborhood to inspect another house which did not meet with the client’s ■approval. The neighbor, however, took the plaintiff and her client to the defendants’ house, where the defendant wife met the plaintiff and her buyer at the door. They entered the house. The *503 plaintiff asked the defendant wife the price, and she was quoted a figure of $18,500. The prospective buyer inspected the house at that time. The plaintiff did not introduce herself as a real estate broker.
As the plaintiff and her client were leaving they met the defendant husband who knew the plaintiff to be a real estáte broker. The plaintiff says that the husband asked her if she had brought a buyer for the house, and she answered in the affirmative. The husband denies this part of the conversation.
The plaintiff carried on no further negotiations at that time between the buyer and the defendants; but, in fact, was anxious to take the buyer away from the premises as soon as possible because she had an appointment elsewhere.
Two weeks later the buyer contacted the defendants, as a result of which the defendants brought the buyer and her niece to the house for another inspection. On this occasion the buyer called the plaintiff from the house and complained to her that the asking price had been increased to $18,900.
The defendants were licensed real estate -salesmen, and during the month of September, 1961, they were employed by another broker, to whom they gave an exclusive listing of their property in October, 1961. Evidently fearing a claim by the plaintiff for commissions, the defendants consulted with an attorney. In subsequent conversations with the plaintiff, the attorney informed the plaintiff that, in his opinion, she had no claim for commissions. However, he said that he would advise his clients to offer her $500 in settlement of any claim she might have. The plaintiff agreed to accept $500.
The prospective buyer was then living in Scarsdale, New York. In January, 1962, her Scarsdale attorneys submitted to the defendants’ attorney a proposed contract for the purchase of the defendants’ house. In reliance upon the plaintiff’s agreement to accept $500, the defendants’ attorney inserted in the contract the following clause: “ The parties agree that C. Purcell has the exclusive listing on the house and that a full 5% real estate commission, to be paid by the seller, has been earned thereon; and that Peggy Black, Realtor, has acted as broker for the buyer and as such shall receive the sum certain of five hundred dollars ($500.00) from the above commission as payment for her services. ’ ’ The contract was returned to the buyer who initialed the added clause.
The plaintiff was advised of the time and place of the closing and she appeared there. After the closing she refused to accept *504 the $500, and instead claimed the full commissions of $945, for which she is now suing.
It is clearly settled that before a broker can collect his commissions, he must have been employed by his principal. Such employment may be express or implied. If express, it may be either written or oral. If implied, the facts surrounding employment must establish that the broker was indeed employed to perform the services performed.
The plaintiff in this case rests her ease upon implied contract. Nowhere in her testimony does she state that the defendants expressly stated that they employed her as their broker. She bases an implied contract upon two facts: 1) that the defendants knew that she was a real estate broker and that, therefore, she expected to be paid a commission by them, and 2) that at some later date the defendant husband met her in a shopping plaza where he stated that1 ‘ he would not cheat her out of one red cent of her commissions. ”
The defendant wife denies that she knew the plaintiff was a real estate broker on the first occasion that the plaintiff came to the house. The defendant husband denies that any such conversation took place with the plaintiff concerning commis-' sions.
The plaintiff admits that after the buyer spoke to her on the telephone from the defendants’ house, she never took part in any further negotiations. She never prepared or submitted a written offer from the buyer, and she never discussed this real estate matter with her buyer after that time.
There are few areas in contract law in which there is more litigation than in the field of real estate brokers’ commissions. This results from the fact that many real estate employment contracts are oral instead of written; and where the broker claims that his contract of employment is implied, then the likelihood of litigation is even greater.
While it is true that oftentimes a seller may attempt to deny a broker his just commission, the broker, on his own part, sets his own trap by being too careless in protecting his legal right's by failing to make sure beforehand that he in truth has been employed by the owner to sell the property. Brokers who rely upon verbal or implied contracts of employment do so at their own peril.
The practice of real estate brokers of walking into an owner’s house with a prospective buyer without any prior meeting or understanding with the' owner is one that should not be condoned by the courts. Such acts are an improper intrusion into the private business of other people. These defendants were *505 part-time real estate salesmen and they had a right to sell their property by their own efforts without uninvited intrusion ■ by the plaintiff. In this case the plaintiff did not even go so far as to identify herself- to the defendant wife as a real estate broker. At no time before introducing the prospective buyer to the owners did she state that she was a broker and that she expected to be paid a commission. It is her contention that the defendants knew that she was a real estate broker and that, therefore, they should have known that she expected to be paid her commission by them. Such a conclusion on her part is not supported by the facts or by the law.
“ It is well settled that if a broker, without a previous request, brings a customer to a vendor, and the "latter, without further acceptance of the broker’s services, takes the customer, the broker is not entitled to compensation. ” (Fowler v. Hoschke, 53 App. Div. 327, 329.)
In Naum v. Wiltsie (271 App. Div. 169, 171) the court said: “ The burden of proof was on the plaintiff to establish that he was acting as an agent for the defendants and had their promise, express or implied, to pay for his services. (Meltzer v. Flying Fame, Inc., 224 App. Div. 41; Kaake v. Griswold, 104 App. Div. 137.) The fact that plaintiff was a licensed real estate broker and defendants knew him to be such did not alone discharge this burden. ‘ A mere volunteer without authority is not entitled to commissions, merely because he has inquired the price, which an owner asks for his property, and has then sent a person to him who consents to take it. ’ (Benedict v. Pell, 70 App. Div. 40.) An owner cannot be enticed into liability for commissions against his will by a volunteer without authority. (McVickar v. Roche, 74 App. Div. 397.) ”
The evidence presented in this case establishes that the plaintiff was acting as the broker for the prospective buyer. In her testimony, she constantly refers to the prospective buyer as ‘1 my buyer ”, “ my purchaser ’ ’, etc. It also appears from the paragraph that was- added to the real estate contract that both the sellers and the buyer considered the plaintiff to be acting as broker for the buyer.
In Meltzer v. Flying Fame (224 App. Div. 41, 42-43) in a similar situation, the court said: “ There was no evidence whatever of an express contract of employment or agreement to pay, and as already appears, the plaintiff concededly relies upon.one implied in law. True, the plaintiff was known to- the defendant as a broker, but ‘ only as the agent of a prospective purchaser of the defendant’s property, and his activity as an agent was developed wholly in buying the -property and-not in selling it.’ *506 (Haynes v. Fraser, 76 App. Div. 627.) In, the circumstances here disclosed the defendant had a right to assume that the plaintiff was representing the purchaser, whom, in the first instance, he represented he had, and whom he finally brought forward. ”
The plaintiff sought to establish through the testimony of another real estate broker that it was the custom for the seller to pay the real estate broker’s commission. “Such a custom, even if it exists, cannot fasten upon a property owner any liability as the employer of a broker ” simply because he consents to sell his property to someone who was induced to buy it through the agency of the broker without any request, express or implied, on the part of the owner. (Brady v. American Mach, & Foundry Co., 86 App. Div. 267, 269.)
Interestingly enough, this same expert also testified that if the plaintiff broker had done only what she had testified to then, in his opinion, she had not earned a commission.
The plaintiff further alleges in her complaint a conspiracy between the defendants and the buyer. However, no proof to establish such a conspiracy was presented. She stated under oath that she had never prepared an offer from the buyer to the seller. There is nothing to show that the buyer had ever refused to sign such an offer. As a matter of fact, it would appear from her testimony that the buyer kept her fully informed of her conference with the defendants by calling her on the telephone from the defendants’ home.
While alleging a conspiracy the plaintiff has only named the sellers as defendants. A conspiracy depends upon a combination of two or more persons intentionally participating in the furtherance of a preconceived scheme or design. It is basic that the persons and entities involved mast be separate. The defendants, as husband and wife, must be considered as one entity. Therefore, the plaintiff’s charges of conspiracy must fall, not only because of lack of proof but because of her failure to include the other alleged conspirator as a party in this action. (Bereswill v. Yablon, 6 N Y 2d 301, 305.)
We now come to the problem of whether the plaintiff is entitled to the $500 which the buyer and the sellers agreed between themselves to pay her under the terms of the real estate contract, although she was not a party to the real estate contract. From her testimony and that of the defendants’ attorney, the offer of $500 in reality was made in settlement of any claim which she might have for commissions. She admits this in her bill of particulars. Because she had agreed to accept the settlement, the defendants’ attorney invited her to the real estate closing. *507 When the transaction was completed, she refused to accept the compromise offer. She had in her possession at that time, a bill charging the defendants the full commission of $945. She gave this bill to the defendants’ attorney at the time of the closing or by mail the next day. She stated that her reason for refusing the lesser amount was that the sale price was $18,900 instead of $18,500, and that she had learned of this difference in the sale price for the first time at the closing. Such an excuse on her part is not supported by the evidence because several months earlier the purchaser had called her on a telephone from the defendants’ home and had informed her that the sale price was $18,900. The fact that she had brought the bill for the full commission with her to the real estate closing leads the court to believe that she induced the parties to rely upon her purported acceptance of the $500 so that they would complete the transaction, and that she intended at all times to sue for the full commissions. In any event, she repudiated her agreement to accept the settlement figure at the closing and on the witness stand. There is, therefore, no agreement by which the plaintiff is entitled to a payment of $500 from the defendants.
Instead of being satisfied to receive part payment for what she believed was due her for her services, the plaintiff wanted all or nothing at all. Accordingly, judgment is granted to the defendants and the complaint is dismissed.