Charley **FARLEY**, Individually and dba Charley Farley Trailer Sales and Manufacturing, and Charley Farley Sales and Wrecking, Appellant,

v.

**CLARK EQUIPMENT COMPANY,**
Appellee.

No. 8262.

Court of Civil Appeals of Texas, Amarillo.

Aug. 7, 1972.

Rehearing Denied Sept. 5, 1972.

Bobby D. Allen, Lubbock, for appellant.

Norton Baker, Lubbock, for appellee.

ELLIS, Chief Justice.

This is an appeal from a default judgment entered against defendant-appellant Charley Farley, sustaining the claim of plaintiff-appellee for recovery of certain money allegedly sent to appellant through error or mistake. Affirmed.

Appellee instituted a lawsuit against appellant on May 28, 1971 in the 72nd District Court of Lubbock County, Texas. The record discloses that appellee's cause of action is based upon error and mistake in the sending of a $77,420.00 check to appellant rather than to another party, Gleason Iron Works, who had a similar account number, and to whom appellee owed the identical sum of $77,420.00. Upon discovery of the alleged mistake, appellee forwarded another $77,420.00 check to Gleason Iron Works in payment of its account. Also, appellee alleged fraud on appellant's part in his retention and refusal to return the proceeds of the check so received by him. On June 14, 1971, appellee secured a temporary injunction against appellant for the purpose of preventing appellant from disposing of $45,000.00 remaining from the check on deposit in The Lubbock National Bank. An answer was filed by appellant on July 12, 1971. On August 23, 1971, according to the judgment, the court, upon appearance by appellee's attorney and consideration of the pleadings and evidence, entered a judgment against appellant, who failed to appear, for the sum of $77,420.00. Appellant timely filed a motion for new trial. Thereafter, at a hearing held on September 20, 1971, appellant was adjudged to be in contempt of court because of his failure to obey the injunction order. Appellant's motion for new trial of the case on its merits was overruled by operation of law. On the 20th day of December, 1971, the court entered a judgment reciting that it was rendered "nunc pro tunc" and setting out that "Defendant having had due notice as required by law of the setting for trial of this cause, failed to appear or present any defense to Plaintiff's cause of action against him;" instead of the original recitation that, "Defendant, failed to appear or answer. . . ." Otherwise, the judgment contains essentially the same recitations as the original judgment of August 23, 1971. Appellant perfected this appeal seeking to set aside the judgment and to secure a new trial on the merits.

Appellant asserts three points of error in this appeal:

(1) "The trial court erred in failing to grant defendant a new trial upon timely motion since the motion and supporting affidavits establish that defendant set-up (sic) a meritorious defense and he was not negligent in asserting such defense."

(2) "The judgment non (sic) pro tunc is void or voidable on its face and original judgment shows error on its face."

(3) "The trial court erred in not acting upon and grantng defendant's motion to vacate and dissolve the temporary injunction order."

Since no hearing was had upon the motion for new trial, the record before us consists of the transcript, a statement of facts containing testimony adduced at the June 14, 1971 injunction hearing and the September 20, 1971 contempt hearing.

Initially, appellee asserts that as to appellant's position in that portion of point of error number one concerning the issue of meritorious defense, appellant has failed to bring forward the defenses alleged in his motion for new trial. Appellee contends that appellant's position in the trial court and in his motion for new trial was that he had a "binding verbal contract," and appellee states that appellant has not brought this point forward. In appellant's first point of error, he contends, among other matters, that he has "set up" a meritorious defense. Appellant's briefing under point number one is couched in terms of implied contract or contract by equitable estoppel. These contentions are based upon the same factual circumstances outlined in appellant's motion for new trial and the affidavits attached thereto. Because of the liberality generally permitted in matters of form pertaining to briefing, we have determined to consider that appellant's basic position is that he "set up" a meritorious de-

fense in his motion for new trial and that his failure to appear in court was not intentional, or the result of conscious indifference and that the granting of a new trial will not occasion delay or harm to the appellee. Rule 418, Texas Rules of Civil Procedure.

The established rule in Texas regarding the setting aside of a default judgment by means of a motion for new trial is stated in Craddock v. Sunshine Bus Lines, Inc., 134 Tex. 388, 393; 133 S.W.2d 124, 126 (1939), as follows:

" . . . A default judgment should be set aside and a new trial ordered in any case in which the failure of the defendant to answer before judgment was not intentional, or the result of conscious indifference on his part, but was due to a mistake or an accident; provided the motion for a new trial sets up a meritorious defense and is filed at a time when the granting thereof will occasion no delay or otherwise work an injury to the plaintiff."

This rule is also applicable to default judgments entered on the failure of the defendant or his counsel to appear for trial. City of Fort Worth v. Gause, 129 Tex. 25, 28; 101 S.W.2d 221, 222 (1937); Ivy v. Carrell, 407 S.W.2d 212, 214 (Tex.Sup. 1966).

Appellant contends that his failure to be present at the time the case was called for trial was not "though (sic) conscious indifference or negligence, nor was his failure to be present intentional on his part; but that same was the result of a mistake or inadverance (sic)." At the time appellant's original answer was filed, he was represented by Mr. John Maner, an attorney. Mr. Maner was present in court with appellant when the injunction hearing was held on June 14, 1971. The deposition of Mr. Maner reflects the following testimony, in part, regarding the setting of the case for trial on the merits:

"Q. Mr. Maner, please state to this court what your recollection is concerning the announcement that the court made concerning the setting of this cause?

"A. . . . As I recall, and I have no notes on my file, she did not give us a specific date, but she did say that she would set the case in either the next to the last or the last, one of the last two weeks in August."

The record includes a copy of the court's trial settings for the week of August 23, 1971, which constitutes a part of the records of the 72nd District Court and reflects that appellant's case was set for August 23, 1971, in the 72nd District Court of Lubbock County, Texas. Attorney John Maner withdrew from the case with leave of the court on July 20, 1971, although appellant contends it was some time after this date that he realized Maner was no longer representing him. The record further reflects that thereafter appellant contacted Mr. Dan Hurley, an attorney, about representing him in this lawsuit. Mr. Hurley informed the appellant that from the investigation he made regarding the setting of the case it was not set for trial in either of the last two weeks in August. Although the appellant was present when the pronouncement was made in open court concerning the court's setting of the case for trial in one of the last two weeks in August, we believe the circumstances subsequent to such pronouncement reflect that appellant was not intentionally or consciously indifferent in regard to his appearance for trial and that his lack of appearance was due to a mistake or accident. Appellee asserts appellant was negligent in not appearing for trial. It has been clearly established that negligence is not the test when a motion for new trial is the method by which review is sought. Ivy v. Carrell, supra.

Appellant also contends in his first point of error that on the basis of his mo-

tion for new trial and the affidavits attached thereto, he has "set up" a meritorious defense and that the trial court erred in not setting aside the default judgment. The rule announced in *Craddock* and further enunciated in Ivy v. Carrell, supra, does not require proof of a meritorious defense but the motion for new trial should "set up" a meritorious defense. The motion must not merely allege that the defendant has a meritorious defense but must go further and allege *facts* which *in law* would constitute a defense to the cause of action asserted by the plaintiff and must be supported by evidence or affidavits proving *prima facie* that the defendant has a meritorious defense. Once the defendant has met this burden it is improper to try the defensive issues made by the motion and pleadings, and the motion for new trial should not be denied upon consideration of counter affidavits or contradictory testimony offered in resistance to such motion. Cragin v. Henderson County Oil Development Co., 280 S.W. 554 (Tex.Comm'n App. 1926, holding approved.). Therefore, appellee's contention in his brief that the statute of frauds bars appellant's recovery under contract law will not be considered, since the statute of frauds contention constitutes an affirmative defense. A default judgment should not be set aside except upon a showing of facts which, if accepted as true, would change the result on a subsequent trial. Holliday v. Holliday, 72 Tex. 581, 10 S.W. 690 (1889).

Appellant's motion for new trial and accompanying affidavits reveal the following circumstances: (1) that on or about January 13, 1971, two representatives of Clark Equipment Company approached him at his place of business and asked appellant at what price he would fabricate one hundred trailers for Clark Equipment Company; (2) that upon being told the unit price of each, the representatives departed; (3) that on or about March 18, 1971, appellant received a check from Clark Equipment Company for $77,420.00, which was $18.00 less in price per unit which appellant had quoted to the representatives of Clark; (4) that upon the strength of the statements made by the Clark representatives and upon receipt of the $77,420.00 check, appellant had a binding verbal contract to fabricate 100 trailers; (5) that thereafter appellant purchased the necessary material and began production of the trailers; (6) that on or about May 29, 1971, appellant was contacted by appellee's attorney, Mr. Norton Baker, who informed him some sort of mistake had been made and that Clark Equipment Company did not want the one hundred trailers; and (7) that on June 6, 7, 8, 1971, Clark accepted delivery of three completed trailers, and that the delivery of the fourth trailer was refused. Appellee's position is that at no time did it order any trailers from appellant.

Appellant's affidavits in support of his motion for new trial contain essentially the same factual allegations as those contained in the motion itself. Appellant contends that the foregoing facts establish the defense of "binding verbal contract" and thus he has "set up" a meritorious defense. We do not agree. Appellant's alleged defense is predicated upon the theory of contract and thus the question before this court is whether he has alleged and proved prima facie facts, that, in law, establish a binding contractual relationship on any theory of contract law.

The primary and essential element of an express or implied contract is the meeting of the minds of the parties by an offer and an acceptance. Dunn v. Price, 87 Tex. 318, 28 S.W. 681 (1894); Flatow, Riley & Co. v. Roy Campbell Co., 280 S.W. 517 (Tex.Comm'n App.1926, holding approved); Willingham v. Thompson, 133 S.W.2d 833 (Tex.Civ.App.—Dallas 1939, no writ); 1 Williston on Contracts, § 23, p. 51. Appellants' quotation of a price per trailer would be in the category of preliminary negotiations and could not be sufficient to fulfill the necessary requisites of a binding offer. 17 C.J.S. Contracts § 46, p. 693. Appellant states in his affidavit that when he received the check from appellee for $77,-

420.00, "I, therefore, decided to *accept* the contract at the price *offered*." (Emphasis ours). Appellant's foregoing statement indicates he considered the check sent by appellee to be an offer. We do not believe the mere sending of a check, which in this case did not conform to any prior negotiations between the parties and which was not accompanied by any other memorandum or oral statements would, in and of itself, constitute a valid offer or counteroffer. The facts alleged by appellant do not at any point under the course of events outlined here, indicate a meeting of the minds on essential terms of a contract, and the element of mutual intent to create a binding contractual relationship is lacking.

It is undisputed that after appellant's receipt of the check, he made no attempt to contact the appellee either to clarify or confirm any alleged agreement. While performance, in the case of a unilateral contract, may be acceptance under circumstances where the promise and the act to be performed are clearly agreed upon and there has been a meeting of the minds, this type of acceptance presupposes at least an initial offer or promise for an act, accompanied with an intention to contract mutually manifested by the parties to be bound by such contractual relationship. In the case before us there was no binding offer or initial mutual intention manifested by either party. Even assuming arguendo, and we expressly hold otherwise, that the check was an offer or counteroffer, there was no acceptance communicated to appellee, under the common law rules of acceptance or as required by V.A.T.C., Business & Commerce Code, § 2.206, which states, in part:

"(a) Unless otherwise unambiguously indicated by the language or circumstances

"(1) an offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances;"

\*　　\*　　\*　　\*　　\*　　\*

"(b) Where the beginning of a requested performance is a reasonable mode of acceptance an offeror who is not notified of acceptance within a reasonable time may treat the offer as having lapsed before acceptance."

The Uniform Commercial Code Comment following this section states the following:

"3. The beginning of performance by an offeree can be effective as acceptance so as to bind the offeror only if followed within a reasonable time by notice to the offeror. Such a beginning of performance must unambiguously express the offeree's intention to engage himself. *For the protection of both parties it is essential that notice follow in due course to constitute acceptance*." (Emphasis ours.)

While the Comment accompanying the Business and Commerce Code does not rise to the level of judicial precedent, it does present assistance in attempting to clarify and ascertain the meaning to be given the particular code section. Also see: 1 Anderson, Uniform Commercial Code, Sec. 2–206:7.

Appellant further contends that he has "set up" facts which in law establish an implied contract. Implied contracts fall in two categories: implied in fact, i. e., those where the element of actual assent is present, and implied in law, i. e., those where the element of actual assent or mutual agreement is missing. 13 Tex.Jur.2d Contracts § 4. A contract in fact is implied where the parties' acts are such to indicate, according to common understanding and the ordinary courses of dealing between men, a mutual intent to contract. Marr-Piper Co. v. Bullis, 1 S.W.2d 572 (Tex.Comm'n App. 1928); Ferrous Products Co. v. Gulf States Trading Co., 160 Tex. 399, 332 S.W.2d 310 (1960). Their conduct does not, in any manner, show that appellant and appellee had assented to a contract. The extraordinary and unusual circumstance of receiving a check in the amount of $77,-420.00, absent any previous agreement, and absent any accompanying explanation, would not be consistent with an "ordinary course of dealing" or "common understand-

ing" pertaining to business practices in relation to forming a binding contractual relationship between the parties under the facts alleged by appellant. The element of mutual intent to contract is essential to express contracts and contracts implied in fact. 13 Tex.Jur.2d Contracts § 5. After considering all of the circumstances, we have concluded that the facts alleged by appellant are not sufficient to base an inference of mutual assent to a contractual relationship.

Appellant does not, either by a specific point of error or briefing under any other point, attempt to establish an implied in law or "quasi contract" and the facts alleged by him do not warrant such a conclusion. Appellant does, however, contend that he has a contract by equitable estoppel. To establish equitable estoppel there must have existed: (1) a false representation or concealment of material facts, (2) made with knowledge, actual or constructive, of those facts, (3) to a party without knowledge or the means of knowledge of those facts, (4) with the intention that it should be acted on, and the party to whom it was made must have relied or acted on it to his prejudice. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929 (1952); Newton v. Town of Highland Park, 282 S.W.2d 266 (Tex.Civ. App.—Dallas 1955, writ ref'd n. r. e.); Hallmark v. United Fidelity Life Insurance Co., 155 Tex. 291, 286 S.W.2d 133 (1956). In our opinion, the facts alleged by appellant, accepted as true, do not come within the definition of equitable estoppel. The facts alleged in appellant's motion for new trial do not reveal that appellee mislead or deceived appellant knowingly, intentionally, or willfully. Further, appellant had the means to ascertain such matters as would clarify the meaning to be given the check he received. Also, appellant fails to allege facts that would reveal an intention on the part of appellee that appellant act upon any representation or concealment to his prejudice. Appellant's motion for new trial and the accompanying affidavits reveal that appellant delivered a trailer on June 6, 7, and 8 respectively which would be *after* he had been contacted and told that appellee did not want the trailers and that some sort of mistake had been made. Appellant attempted to deliver a fourth trailer which was refused. Therefore, as of May 29, 1971, and before any trailers were delivered, appellee had put appellant on notice that the trailers were not to be delivered and that a mistake had been made. In addition to appellee's denial of the existence of an agreement to purchase the trailers, appellee had filed suit against appellant before any deliveries were made. Since appellant's motion for new trial and affidavits contain the admission that he was told prior to delivery of the three trailers that appellee did not want any trailers, and that a mistake had been made, we do not believe that appellant's actions subsequent to May 29, 1971, should be regarded as being pursuant to any alleged contract between the parties in this case. Further, it should be expressly noted that appellee makes no claim of ownership as to any of the trailers delivered to its premises, and the judgment of the trial court was granted on the basis of a liquidated claim in the sum of $77,420.00, the amount of the check sent to appellant.

■ From an exhaustive perusal of the facts alleged by appellant in his motion for new trial and the accompanying affidavits, accepting those facts as true and disregarding all defenses and contradictions, we hold that appellant has failed to "set up" a meritorious defense in such motion and affidavits. In view of our holding as to meritorious defense contentions of appellant we do not reach the question of whether the granting of a new trial would occasion delay or otherwise work an injury to appellee.

■ Appellant contends in his second point of error that: "The judgment non (sic) pro tunc is void or voidable on its face and original judgment shows error on its face." Appellee contends that appellant has failed to allege this point of error in his

motion for new trial and is therefore precluded from having it considered on appeal. The record reflects, however, that the nunc pro tunc judgment was entered after the filing of appellant's motion for new trial. Even assuming, arguendo, his point was properly raised, the second judgment was corrected within 30 days of the original judgment which was within the prerogative of the trial court. T.R.C.P. 329b. Further, the second judgment entered September 20, 1971 recites that: "(T)he following judgment be and is hereby rendered nunc pro tunc and as of, such time of such former adjudication." Whether considered as an amended judgment or a pure nunc pro tunc, the judgment dated September 20, 1971 is valid. Appellant's second point of error is overruled.

■ Appellant's third point of error, wherein he complains of the failure of the trial court to vacate and dissolve the temporary injunction order is without merit and is accordingly overruled. Appellant had an opportunity to appeal within twenty days from the rendition of the order granting the temporary injunction. T.R.C.P. 385. The cases cited by appellant deal with appeals from the dismissal of a case and are inapplicable to the case before us. If the injunctive order were not interlocutory in nature, then appellant failed to raise the matter in his motion for new trial.

The granting or denial of a new trial rests largely within the discretion of the trial court, and its action will not be disturbed on appeal except for a manifest abuse of discretion. Muenster Manufacturing Company v. Muenster Industrial Foundation, 426 S.W.2d 909, 912 (Tex.Civ. App.—Fort Worth 1968, no writ). We have carefully reviewed the evidence in conjunction with the applicable rules governing the disposition of a motion for new trial, and hold that the trial court's denial of such motion was not an abuse of discretion. Finding no reversible error, we affirm the judgment of the trial court.

Affirmed.